JEFF SWOBODA, APPELLEE, V. VOLKMAN PLUMBING AND
EMCASCO INSURANCE COMPANY, APPELLANTS.

690 N.W.2d 166

Filed December 23, 2004.   No. S-04-593.

Jenny L. Panko and Brenda S. Spilker, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellants.

Edward F. Pohren, of Dwyer, Smith, Grimm, Gardner, Lazer, Pohren, Rogers & Forrest, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Jeff Swoboda sought workers' compensation benefits for injuries allegedly arising out of and in the course of his employment with Volkman Plumbing. Swoboda sought benefits for injuries to his head and neck resulting from an accident on April 21, 2000, and for injuries to both shoulders allegedly resulting from repetitive trauma. The trial judge found that the head and neck injuries were compensable, but concluded that Swoboda had failed to prove a work-related accident and resulting injuries to his

shoulders. A review panel of the compensation court reversed in part, and remanded for further proceedings. Volkman Plumbing and its insurance carrier, EMCASCO Insurance Company (collectively Volkman), perfected this timely appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## FACTS

Swoboda began working at Volkman Plumbing in Norfolk, Nebraska, in 1990. He was initially employed as a plumber's helper but soon became a foreman. His duties included overhead ceiling work, which involved heavy lifting. He regularly performed such overhead activities for at least 3 or 4 hours a day, and sometimes for an entire shift.

On April 21, 2000, Swoboda sustained an injury to his head and neck when he struck his head on a sprinkler head while climbing a ladder. Swoboda sought medical treatment for the injury and was off work from May 1 until September 9, 2000. He initially returned to work without restrictions. However, Swoboda continued to experience chronic headaches and pain, and in March 2002, specifically due to the neck injury, his physician imposed physical restrictions of "no overhead work or prolonged cervical flexion." In April, his physician opined that there was no ongoing treatment that would significantly improve Swoboda's symptoms and concluded that he had a 5-percent permanent partial impairment of the body as a whole. A second physician had earlier made the same assessment, noting that Swoboda suffered "persistent myofascial symptoms and functional deficit." The trial court concluded that as a result of this injury, Swoboda had sustained a 45-percent loss in earning capacity.

Swoboda also claimed compensation for work-related injuries to both shoulders. Swoboda went on a fishing trip to Canada over the Labor Day weekend of 2001. He is right handed, and holds a fishing pole in his right hand while reeling with his left. Swoboda slept in a tent while on the fishing trip. One morning when he awoke, he experienced extreme pain and was unable to move his left arm. When he returned to Nebraska, he made an appointment with Dr. Gregory Nunez for September 6, 2001. Prior to the fishing

trip, Swoboda had experienced aching in his right shoulder and "a little" pain in his left shoulder. In his words, he had had "problems with both shoulders for [years]" and his left shoulder had "hurt for a [year] or two."

After examining Swoboda, Nunez ordered an MRI and referred him to Dr. Terry Schwab, an orthopedic surgeon, who began treating him on September 20, 2001. A report of an MRI performed on the left shoulder on September 12, 2001, indicated a "full thickness tear" in the supraspinatus tendon adjacent to an area of calcification. After his first examination of Swoboda, Schwab noted his disagreement with this diagnosis. Schwab's initial diagnosis was "[p]artial rotator cuff tear/tend[o]nitis left shoulder with calcific tend[o]nitis." During his second office visit, Swoboda told Schwab that he was surprised that his left shoulder was injured because his right shoulder "had been the one that had bothered me." Schwab thereafter began treating Swoboda's right shoulder as well.

On October 10, 2001, Dr. Dean Wampler reviewed Swoboda's medical records and opined:

> Overhead work duties are the most likely cause for . . . Swoboda's underlying shoulder problem. [O]nce advanced degenerative disease and tendon thinning are present, relatively minimal activities can result in tendon tear. I believe . . . Swoboda's supraspinatus tear occurred during his fishing trip from a change in activities or different shoulder stress of sleeping on the ground.

(Emphasis in original.)

Due to his shoulder injuries, Swoboda was off work from September 21 through October 7, 2001. He returned to work briefly, but then experienced additional problems with his left shoulder on November 9, and did not return to work thereafter. On November 20, Schwab performed an arthroscopy of Swoboda's left shoulder with subacromial decompression. His postoperative diagnosis was "[c]alcific tendon, rotator cuff tendonitis, left shoulder." The rotator cuff was observed during surgery and, contrary to the initial diagnosis, "showed no tears throughout its entirety." On December 5, 2001, Schwab performed an arthroscopy of Swoboda's right shoulder with subacromial decompression. His postoperative diagnosis was "[c]alcific rotator cuff tendonitis

of the right shoulder," and no tears were noted. Schwab opined that Swoboda's bilateral shoulder problems were caused by the overhead work he did in the course of his employment.

Following trial, a single judge of the compensation court found that as a result of the April 21, 2000, accident, Swoboda was temporarily totally disabled from May 1 through September 9, 2000, and "thereafter sustained a 45 percent loss in earning capacity," entitling him to workers' compensation benefits. With respect to the alleged shoulder injuries, the court determined that there was a conflict in the opinions of Schwab and Wampler regarding causation. It further found that Swoboda had failed to prove that the injuries to his shoulders occurred "suddenly and violently" because there was no particular incident at work that had caused him pain. The court concluded that Volkman was entitled to a credit for benefits it voluntarily paid to Swoboda for his right shoulder injury against amounts it owed Swoboda for the April 2000 injuries to his head and neck.

Swoboda timely appealed to a three-judge review panel of the compensation court, and Volkman cross-appealed. The review panel interpreted the trial court's order as citing two grounds as a basis for its conclusion that Swoboda failed to show compensable injuries to his shoulders: (1) that there was a conflict in the medical evidence as to causation and (2) that the injuries did not occur suddenly and violently because they did not manifest at work. The review panel concluded that the opinions of Schwab and Wampler were not in conflict because the rotator cuff tear referred to by Wampler was subsequently proved by Schwab's surgery not to exist, leaving both physicians in agreement that the shoulder problems were caused by Swoboda's work activities. The panel thus determined that the trial judge's finding with respect to conflicting evidence on medical causation was clearly erroneous and should be reversed and the cause remanded

> for the trier of fact to determine whether the reversal by the panel of this factual finding serves, in and of itself, to sway the fact finder's ultimate conclusion on medical causation. In other words, it remains for the fact finder to weigh and assess the evidence on causation.

With respect to the requirement that a compensable accident involving repetitive trauma occurs "suddenly and violently," the

review panel determined, contrary to the findings of the single judge, that "the record clearly establishes that [Swoboda] satisfied this element relative to both upper extremities." The review panel held that Swoboda was not required "to identify a specific event or activity that occurred at work that caused him to stop working." The panel determined that the "record does not support a finding that Swoboda's injury did not occur at an identifiable point in time" and that the "evidence is also uncontroverted that [Swoboda] sought medical treatment and missed work."

The review panel also concluded that the Workers' Compensation Court lacked jurisdiction to award a credit against liability on a compensable claim for payments made on a noncompensable claim. Finally, it concluded that there was sufficient evidence to support the trial court's finding that Swoboda suffered a 45-percent loss of earning capacity as a result of the April 2000 injury.

## ASSIGNMENTS OF ERROR

Volkman assigns, restated, that (1) Swoboda failed to meet the requirements of a repetitive trauma accident with regard to his left and right shoulder conditions, (2) the review panel erred in reversing the trial court's decision regarding Swoboda's left and right shoulder injuries on the basis that there was not a dispute as to medical causation, (3) it was entitled to a credit against amounts owed for the April 2000 injury for indemnity and medical payments voluntarily made on the noncompensable shoulder injuries, and (4) the trial court erred in awarding Swoboda a 45-percent loss of earning power for the injuries sustained in the April 2000 accident.

## STANDARD OF REVIEW

■ Under Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Veatch v. American Tool*, 267 Neb. 711, 676 N.W.2d 730 (2004).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of fact of the single judge who conducted the original hearing; the findings of fact of the single judge will not be disturbed on appeal unless clearly wrong. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003); *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004); *Veatch v. American Tool, supra.*

## ANALYSIS

### HEAD AND NECK INJURIES

Volkman does not contest the compensability of the head and neck injuries which Swoboda sustained in the accident in April 2000, but contends that the compensation court erred in determining that Swoboda sustained a 45-percent loss of earning capacity as a result of such injuries. A determination as to whether an injured worker has had a loss of earning power is a question of fact to be determined by the Workers' Compensation Court. *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002); *Hagelstein v. Swift-Eckrich*, 261 Neb. 305, 622 N.W.2d 663 (2001). Earning power, as used in Neb. Rev. Stat. § 48-121(2) (Reissue 2004), is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted. *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003); *Frauendorfer v. Lindsay Mfg. Co., supra.*

Volkman argues that Swoboda continued to work as a plumber after the 2000 accident and was able to perform his duties until after the 2001 shoulder injuries. The record reflects that Swoboda returned to work without restrictions after the 2000 accident. However, there is also evidence in the record that Swoboda continued to suffer pain while performing his work duties after the 2000 accident. In addition, his physician eventually restricted

Swoboda's ability to do overhead work as a result of his head and neck injuries. Two physicians also essentially opined that no further treatment could alleviate his symptoms. Because Swoboda's work as a plumber involved substantial overhead activities and there is evidence that he was not qualified to perform many other work functions, we conclude that there is competent evidence in the record to support the trial court's finding of a 45-percent loss of earning capacity.

## BILATERAL SHOULDER INJURIES

After noting what he perceived as a conflict in the medical evidence on the issue of whether the degenerative condition of Swoboda's shoulders was caused by the heavy overhead work required by his employment with Volkman Plumbing, the trial judge stated:

> The Court has reviewed in detail the medical evidence concerning causation, and the Court finds by a preponderance of the evidence that [Swoboda] has failed to prove that he sustained an accident and injury as defined by § 48-151(2) to his left and right shoulders and arms that arose out of and in the course and scope of his employment on September 6, 2001. *Specifically, the Court finds that [Swoboda] failed to prove an accident that happened "suddenly and violently producing at the time objective symptoms."*

(Emphasis supplied.) The review panel noted that the conflict in medical evidence served "as at least one basis for [the trial judge's] rejecting [Swoboda's] claim" and concluded that the finding by the trial judge was clearly erroneous because "the opinions of both Dr. Wampler and Dr. Schwab are uniform as to the cause of [Swoboda's] shoulder injuries." In assigning error to this determination, Volkman does not contend that the medical opinions were in conflict, but, rather, argues that this issue was not a basis for the trial court's determination that the injuries were not compensable. Volkman contends that the trial court's determination was based solely upon its finding that Swoboda failed to show he met the suddenly and violently element of a repetitive trauma claim.

While we agree with the review panel that the medical causation evidence is not in conflict, we also agree with Volkman

that the conflict perceived by the trial judge was not the basis for denial of Swoboda's claim. As we read the award, compensation was denied because the trial judge specifically found that Swoboda did not prove an accident which happened suddenly and violently and produced objective symptoms. We therefore accept Volkman's argument that this is the sole dispositive issue as to whether Swoboda is entitled to workers' compensation for his shoulder injuries.

For purposes of workers' compensation, repetitive trauma injuries are tested under the statutory definition of accident, as opposed to occupational disease. See *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003) (citing cases). The Nebraska Workers' Compensation Act defines an accident as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Neb. Rev. Stat. § 48-151(2) (Cum. Supp. 2002). Three elements must be demonstrated in order to prove that a workers' compensation injury is the result of an accident: (1) The injury must be unexpected or unforeseen, (2) the accident must happen suddenly and violently, and (3) the accident must produce at the time objective symptoms of injury. *Dawes v. Wittrock Sandblasting & Painting, supra*. Only the second of these elements is at issue in this case.

In considering the "suddenly and violently" element of accidental injury in the context of repetitive trauma injuries, we have recognized that given the nature of the human body, not all injuries are caused instantaneously and with force, but may nevertheless be sudden and violent, even though they have been building up for a considerable period of time and do not manifest themselves until they cause the employee to be unable to continue his or her employment. *Dawes v. Wittrock Sandblasting & Painting, supra*; *Sandel v. Packaging Co. of* America, 211 Neb. 149, 317 N.W.2d 910 (1982). Thus, for purposes of the Nebraska Workers' Compensation Act, "suddenly and violently" does not mean instantaneously and with force, but, rather, the element is satisfied if the injury occurs at an identifiable point in time, requiring the employee to discontinue employment and seek medical treatment. *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999); *Frank v. A & L Insulation*, 256 Neb. 898,

594 N.W.2d 586 (1999). The time of an accident is sufficiently definite " 'if *either* the cause is reasonably limited in time *or* the result materializes at an identifiable point.' " (Emphasis omitted.) *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. at 556, 667 N.W.2d at 193; *Sandel v. Packaging Co. of America, supra.*

This disjunctive test is consistent with general principles of workers' compensation. In his treatise, Professor Larson explains the concept of "time-definiteness" with respect to an accidental injury as "applying to either the cause or the result." 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 50.01 at 50.02 (2000). Professor Larson states that the necessary "suddenness" of the accident may be found either in a sudden cause, such as a relatively brief exposure to toxic fumes, or in a sudden result, such as a sudden collapse on a particular day after repeated exposure to a work trauma. *Id.* Understood in this light, our test allows the requisite suddenness to be found if either the cause of an accident is sudden, i.e., occurring within a reasonably limited time, or if the effect or result of the accident is sudden, i.e., occurring at an identifiable point in time. Volkman argues on appeal that Swoboda failed to meet either of these tests and thus did not prove an accident occurring suddenly and violently.

Volkman reads *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), to require that the identifiable point in time at which the result of an accident materializes must occur during working hours in order for there to be a compensable accidental injury. It argues that as to Swoboda's left shoulder injury, "[t]here was never any work event requiring him to miss work and seek treatment. Rather, he suffered the disabling left shoulder symptoms during the fishing trip . . . ." Brief for appellants at 20. With respect to Swoboda's right shoulder, Volkman argues that there was never a point where his injury manifested at work and prevented him from doing work activities.

This argument reads too much into *Dawes*. In that opinion, we simply stated that "Dawes seriously injured his back in October 1999 and stopped work to seek medical treatment." *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. at 531, 667 N.W.2d at 177. *Dawes* does not hold that the identifiable point in time at which the injurious result of repetitive trauma materializes must fall within the employee's working hours in

order to be compensable, and we decline to impose such a requirement here. There is no logical reason to condition compensability upon the worker being "on the clock" at the identifiable point in time when an injury resulting from work-related trauma materializes. Thus, the fact that Swoboda's shoulder injury materialized at a point in time when he was engaged in recreational activities unrelated to his work does not in and of itself defeat his claim for compensation. The record reflects that Swoboda sought medical treatment for his left shoulder as soon as he returned from the fishing trip.

Volkman also argues that because Swoboda did not stop work and seek medical treatment for his right shoulder, the injury was not compensable. In *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999), an employee undergoing a functional capacity evaluation for an unrelated injury mentioned to his physician that he was experiencing problems with his right shoulder. We found this sufficient to meet the requirement that an employee seek medical treatment for the condition for which he seeks compensation. Thus, although Swoboda did not initially make an appointment with his doctor in connection with his right shoulder injury, the record reflects that he sought medical treatment for that injury as well as the injury to his left shoulder. Within a short time thereafter, he discontinued his employment.

For these reasons, we agree with the review panel that the record conclusively establishes that Swoboda's bilateral shoulder injuries, which were the result of repetitive work-related trauma, materialized at an identifiable point after which he sought medical treatment and discontinued his employment. Because this satisfies the disjunctive test for whether accidental injury occurs suddenly and violently, we need not consider whether the cause of such injuries is reasonably limited in time. See *Dawes v. Wittrock Sandblasting & Painting, supra.*

## CREDIT

Volkman assigns error to the determination by the review panel that the trial judge lacked jurisdiction to award Volkman a credit against its liability on the compensable head and neck injury claim for amounts which it voluntarily paid on the right shoulder injury claim before the trial judge determined that such

claim was not compensable. A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *In re Application No. C-1889*, 264 Neb. 167, 647 N.W.2d 45 (2002); *Eastroads v. Omaha Zoning Bd. of Appeals*, 261 Neb. 969, 628 N.W.2d 677 (2001). Because we determine that all of Swoboda's injuries were compensable, the issue of whether the trial court had jurisdiction to order the credit is moot, and we therefore do not address it.

## CONCLUSION

The review panel did not err in affirming the trial judge's finding that Swoboda sustained a 45-percent loss of earning capacity as a result of the April 21, 2000, accident in which he sustained injuries to his head and neck. The review panel correctly determined that the trial judge erred in finding that Swoboda failed to prove that his shoulder injuries were caused by an accident occurring suddenly and violently within the meaning of the Nebraska Workers' Compensation Act. Because we conclude that resolution of the latter issue establishes that the bilateral shoulder injuries are compensable, we modify the judgment of the review panel by directing that upon remand to the trial judge, the only issues remaining for resolution are those pertaining to the workers' compensation benefits which Swoboda is to be awarded for the shoulder injuries.

AFFIRMED AS MODIFIED.