RICHARD E. TOMLIN, APPELLEE, v. DENSBERGER DRYWALL INC. AND UNITED FIRE GROUP, APPELLANTS.

706 N.W.2d 595

Filed December 6, 2005. No. A-05-284.

John W. Iliff and Francie C. Riedmann, of Gross & Welch, P.C., L.L.O., for appellants.

Jamie Gaylene Scholz, of Shasteen, Brock & Scholz, P.C., for appellee.

SIEVERS, CARLSON, and CASSEL, Judges.

SIEVERS, Judge.

## INTRODUCTION

Densberger Drywall Inc. (Densberger) and United Fire Group (United) appeal the decision of the Nebraska Workers' Compensation Court review panel affirming the decision of the trial court, which found that Richard E. Tomlin suffered a compensable shoulder injury arising out of and in the course of his employment with Densberger.

## FACTUAL BACKGROUND

Tomlin had been working in the drywall industry since 1972, with the exception of about 2 years. Tomlin began his employment as a "[r]ocker framer" with Densberger on July 23, 2001, and ended his employment in August 2003. Tomlin testified that his job duties as a "rocker framer" were metal framing and drywall hanging and that while performing such duties, he did "lots" of heavy lifting and "overhead work." Prior to working at Densberger, Tomlin was part owner in a company called Drywallers, Inc. At Drywallers, he had those same job duties but he also had supervisory duties, and therefore, he did not do as much physical labor as in his employment at Densberger.

On June 3, 2002, Tomlin went to see John Grandgenett, a nurse practitioner at the office of his family physician, for a "recheck [of] blood pressure medication." While seeing Grandgenett, Tomlin complained that he had been experiencing right shoulder pain for approximately 1 year but that he had no known trauma or injury. Grandgenett referred Tomlin to Dr. David J. Clare, an orthopedist.

On June 12, 2002, Tomlin saw Dr. Clare. Dr. Clare's notes state that Tomlin has had problems with his right shoulder for a couple of years but that Tomlin was unable to recall an injury. Dr. Clare diagnosed Tomlin with degenerative arthritis in his right shoulder. In a letter dated September 18, 2002, Dr. Clare opined:

There has been some question as to whether this [severe degenerative arthritis of the right shoulder] defines a

> Workman Comp case. Although [Tomlin] did not sustain a single, isolated work-related injury, I feel he has experienced accumulative trauma that has resulted in the degenerative condition. I cannot say with 100% certainty that his work is the direct cause of his shoulder condition, but 30 years of laying dry wall undoubtedly contributed in some form or fashion to his degenerative right shoulder condition.

On that same day, Dr. Clare stated in his progress notes that "the long term heavy, repetitive work [Tomlin] performed for over 30 years has at least contributed to [his] level of degenerative arthritis."

In a letter dated December 16, 2002, Dr. Clare opined: "The etiology of [Tomlin's] arthritis is difficulty [sic] to definitively determine. He has been employed laying drywall for 30 years. I do believe that this occupation has contributed to the development of his arthritis."

On September 12, 2002, Tomlin presented to Dr. David A. Clough for a second opinion. Dr. Clough diagnosed Tomlin with degenerative arthritis and stated, "In the absence of a specific injury, I can not attribute this to Workers' Compensation." Dr. Clough clarified his opinion in a February 13, 2003, letter as follows:

> My statement, 'In the absence of a specific injury, I can not attribute this to Workers' Compensation', was intended to include both causation directly as well as aggravation of a pre-existing condition. It is my opinion, to a reasonable degree of medical certainty, that . . . Tomlin's degenerative arthritis of the right shoulder was not caused and not aggravated by his employment at Densberger . . . . It is my opinion that the degenerative arthritis is following it's [sic] natural progression with increasing symptoms and with decreasing levels of work activity and that his employment for the last year has not been a factor in any way.

On November 8, 2002, Dr. Clare performed a right shoulder hemiarthroplasty. Tomlin testified that he missed work for the surgery but that he did not remember missing work for any other doctors' appointments. On January 15, 2003, Tomlin returned to work at Densberger, doing "light duty."

On August 13, 2003, Dr. D.M. Gammel provided a medical evaluation of Tomlin based on a July 29 physical examination of Tomlin, a personal interview and history given by Tomlin, and a review of medical records and tests from June 3, 2002, to June 5, 2003. Dr. Gammel opined: "Tomlin's repetitive, heavy, overhead work duties as a drywall installer for thirty years resulted in and substantially contributed to the development of his right shoulder degenerative joint disease and need for subsequent medical intervention including right shoulder hemiarthroplasty." Dr. Gammel issued an impairment rating of 15 percent to the right upper extremity.

## PROCEDURAL BACKGROUND

Tomlin filed a petition in the Nebraska Workers' Compensation Court on October 17, 2002, alleging that on June 12, he had sustained an injury in an accident arising out of and in the course of his employment with Densberger. Following a trial before a single judge on September 18, 2003, the trial court issued an award on March 23, 2004. The trial court found that Tomlin's shoulder injury was a result of the cumulative effects of a work-related trauma. The court stated that the parties' greatest contention regarding Tomlin's injury being an "accident" was whether the injury occurred "suddenly and violently." The trial court found that Tomlin's discontinuance of employment occurred within a reasonably limited period of time after the appearance of his symptoms and that when Tomlin "submitted himself to surgery" and missed work for such, he established an identifiable point in time when the injury occurred. Thus, the trial court found that the date he suffered his accident was November 8, 2002.

As to causation, the trial court stated that it had "carefully weighed and evaluated each of [the expert witnesses'] opinions" and that "a sufficient ca[us]al nexus has been proven so as to link [Tomlin's] shoulder injury to the subject accident." The trial court specifically stated that it "relied" on the opinion of Dr. Gammel and was "persuaded" by the opinions of Dr. Clare.

The trial court awarded Tomlin temporary total disability benefits for 9⅗ weeks, permanent disability benefits for 33¾ weeks based on an impairment rating of 15 percent to the right upper

extremity, and both medical and mileage expenses. The court denied an award for future medical benefits, finding the evidence insufficient to support such an award. The trial court found that there was a reasonable controversy which insulated Densberger and United from liability for the requested penalties, attorney fees, and interest.

Densberger and United appealed to the Workers' Compensation Court review panel the trial court's award. The review panel affirmed the trial court's award in all respects, stating that the trial court was not clearly wrong and that there was sufficient evidence in the record to support the award. Densberger and United timely appeal to this court.

## ASSIGNMENTS OF ERROR

Although Densberger and United assert 10 assignments of error in their brief, we restate and renumber the errors in accordance with those assignments that are actually argued in their brief. See *Shipferling v. Cook*, 266 Neb. 430, 665 N.W.2d 648 (2003) (errors assigned but not argued will not be addressed on appeal). Densberger and United assert that the trial court erred in (1) finding that Tomlin was injured in an accident arising out of and in the course of his employment with Densberger, because the injury was not caused by Tomlin's employment with Densberger; (2) finding that Tomlin sustained a repetitive trauma injury, because the injury does not meet the statutory definition of an accident; (3) finding that Tomlin suffered a repetitive trauma injury on November 8, 2002, because such finding violated Densberger's and United's due process rights and Workers' Comp. Ct. R. of Proc. 11 (2002); (4) awarding medical expenses and mileage; and (5) failing to sustain the objections to exhibits 1, 2, and 5 through 8.

## STANDARD OF REVIEW

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of fact of the single judge who conducted the original hearing; the findings of fact of the single judge will not be disturbed on appeal unless clearly wrong. *Schwan's Sales Enters. v. Hitz*, 263 Neb. 327, 640 N.W.2d 15 (2002). An appellate court may modify, reverse, or

set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998).

█ An appellate court is precluded from substituting its view of the facts for that of the compensation court if the record contains evidence to substantiate the factual conclusions reached by the compensation court. *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996). See Neb. Rev. Stat. § 48-185 (Reissue 2004).

█ In analyzing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party, who also receives the benefit of all inferences that may be drawn from the evidence. *Armstrong v. Watkins Concrete Block*, 12 Neb. App. 729, 685 N.W.2d 495 (2004). The issue in regard to causation of an injury or disability is one for determination by the fact finder, whose findings will not be set aside unless clearly erroneous. *Id.*

## ANALYSIS

*Causation.*

█ Densberger and United contend that the trial court erred in finding that Tomlin's injury was caused by his employment with Densberger. Densberger and United state in their brief that Tomlin's injury was not an accident arising out of his employment because "his shoulder condition was the result of his 30 year occupation as a drywaller and not a result of his employment by Densberger." Brief for appellant at 14. The phrase "arising out of," as used in Neb. Rev. Stat. § 48-101 (Reissue 2004), describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope or sphere of the employee's job. *Zoucha v. Touch of Class Lounge*, 269 Neb. 89, 690 N.W.2d 610 (2005). "The 'arising out of' employment requirement is primarily concerned with causation

of an injury." *Misek v. CNG Financial*, 265 Neb. 837, 842, 660 N.W.2d 495, 500 (2003).

In finding that Tomlin's injury was caused by or "arose out of" his employment with Densberger, the trial court relied on the medical opinion of Dr. Gammel and was "persuaded" by the opinions of Dr. Clare. According to the trial court, both physicians' opinions "blamed the cumulative repetitive task associated with the dry-walling trade as the cause of [Tomlin's] problem." Dr. Gammel opined, "Tomlin's repetitive, heavy, overhead work duties as a drywall installer for thirty years resulted in and substantially contributed to the development of his right shoulder degenerative joint disease." Dr. Clare stated that "the long term heavy, repetitive work [Tomlin] performed for over 30 years has at least contributed to [his] level of degenerative arthritis" and that "30 years of laying dry wall undoubtedly contributed in some form or fashion to [Tomlin's] degenerative right shoulder condition." Although Dr. Clough's opinion was that Tomlin's employment at Densberger did not cause his injury, it is the role of the compensation court as the trier of fact to determine which, if any, expert witnesses to believe. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004). Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

In addition to the medical opinions relating Tomlin's work as a drywaller to his degenerative arthritis, Tomlin testified that as a "rocker framer" for Densberger, he did "lots" of heavy lifting and overhead work. He testified that when he was hanging drywall, he lifted between 50 and 100 pounds "all day." Tomlin stated that the overhead work caused him to have "specific kinds of pain in [his] shoulder" and that it got to the point where the pain was "unbearable" and he could not lift things. He testified that before he began working at Densberger, he had aches and pains in his shoulder, but that when he began working at Densberger, his pain "got worse real quick." Tomlin testified that he had not received medical attention for his shoulder before he worked at Densberger, and Densberger and United produced no evidence to the contrary.

▮ Because both Drs. Clare and Gammel opined that overhead work and heavy lifting contributed (substantially so, in Dr. Gammel's words) to Tomlin's shoulder injury, and because Tomlin testified that he performed lots of overhead work and heavy lifting at Densberger, the trial court did not err in determining that Tomlin's injury resulted from the risks arising within the scope or sphere of his employment with Densberger, i.e., overhead work and heavy lifting. See *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996) (expert opinion is to be judged in view of entirety of expert's opinion and is not validated or invalidated solely on basis of presence or lack of magic words "reasonable medical certainty").

*Accident.*

▮ Densberger and United assert that the trial court erred in finding that Tomlin was injured in an "accident" that arose out of and in the scope of his employment with Densberger. The trial court found that Tomlin suffered a repetitive trauma injury. Generally, compensation for repetitive trauma injuries is to be tested under the statutory definition of an accident. See *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992). Three elements must be satisfied under the statutory definition of an accident: (1) The injury must be " 'unexpected or unforeseen,' " (2) the accident must happen " 'suddenly and violently,' " and (3) the accident must produce " 'at the time objective symptoms of an injury.' " See *Jordan v. Morrill County*, 258 Neb. 380, 388, 603 N.W.2d 411, 418 (1999).

▮ For purposes of the Nebraska Workers' Compensation Act, "suddenly and violently" does not mean instantaneously and with force, but, rather, the element is satisfied if the injury occurs at an identifiable point in time, requiring the employee to discontinue employment and seek medical treatment. *Swoboda v. Volkman Plumbing*, 269 Neb. 20, 690 N.W.2d 166 (2004). The trial court found that Tomlin had established the "suddenly and violently" element of an accident, because the cause was reasonably limited in time and because the result materialized at an identifiable point.

Tomlin testified in his deposition that he did not know when he was injured but that he believed his injury was caused by

continuous lifting and working overhead. He also admitted at trial that there "[wa]s no accident" and that nothing happened suddenly or violently to cause symptoms of an injury, he just had pain. He testified that he began to "notice" pain 1 to 3 years before he went to the doctor, which was in June 2002. Tomlin admitted that while he was employed at Densberger, the pain in his shoulder was "unbearable." He admitted that he did not remember if he missed work for his doctors' appointments but that he did miss work for his November 8, 2002, surgery. He did not return to work at Densberger until January 15, 2003, at which time he performed "light duty" work.

The trial court found that when Tomlin stopped working due to his surgery on November 8, 2002, such stoppage was sufficient to satisfy the suddenly and violently test. We agree. "[S]topping work to seek medical attention, after which attention the employee returns to work, is sufficient to establish the 'identifiable point in time' component of the 'suddenly and violently' test." *Armstrong v. Watkins Concrete Block*, 12 Neb. App. 729, 738, 685 N.W.2d 495, 504 (2004). The fact that Tomlin stopped working at Densberger in order to undergo surgery on his right shoulder and returned to light-duty work more than 2 months later, which work was different from the type of work he did prior to his surgery, is sufficient to constitute an identifiable point in time after which he sought medical treatment and discontinued his employment. Because we find an identifiable point in time, we need not consider whether the cause of Tomlin's injuries is reasonably limited in time. See *Swoboda, supra* (finding identifiable point in time satisfies disjunctive test for whether employee's accidental injury occurs suddenly and violently, making it unnecessary to determine whether cause of injury is reasonably limited in time). The Nebraska Supreme Court has recognized that given the nature of the human body, not all injuries are caused instantaneously and with force, but may nevertheless be sudden and violent, even though they have been building up for a considerable period of time and do not manifest themselves until they cause the employee to be unable to continue his or her employment. *Swoboda, supra*; *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003). Therefore, Densberger

and United's argument that there was no "accident" causing Tomlin's injury is without merit.

*Date of Injury.*

Densberger and United assert that the trial court erred in finding that Tomlin's date of injury was November 8, 2002, because the finding was inconsistent with the theory upon which the case was pled and tried. We have already determined that November 8, 2002, was a proper date of injury for the trial court's finding of a compensable accident.

In *Armstrong, supra,* we found that when an injured worker pleads a specific date of injury and fails to plead that the injury resulted from repetitive trauma, such failure is not dispositive on the issue of repetitive trauma. In following *Hayes v. A.M. Cohron, Inc.,* 224 Neb. 579, 400 N.W.2d 244 (1987), *disapproved on other grounds, Heiliger v. Walters & Heiliger Electric, Inc.,* 236 Neb. 459, 461 N.W.2d 565 (1990), we further found in *Armstrong, supra,* that when an employer will not be misled by a worker's pleading of a specific date of injury and the evidence is sufficient to support a claim of repetitive trauma, the compensation court must consider whether the injury is a result of repetitive trauma.

Here, although Tomlin pled a specific injury date of June 12, 2002, and did not plead a repetitive trauma, there were pretrial proceedings as early as 8 months before trial which clearly put the question of whether Tomlin's injury was a result of repetitive trauma in issue. For example, Tomlin testified at his deposition on January 27, 2003, that he believed the continuous lifting and overhead work at Densberger caused his injury. He admitted that he missed work only for his surgery and not for his doctors' appointments. He admitted that he worked from June 12, 2002—the date of the accident he alleged in his petition—until his surgery, that he missed work for his surgery, and that he then returned to work on January 15, 2003. Tomlin also stated at his deposition, "I don't know when I got injured" and "I don't know when [the injury] happened." He stated that nothing specific happened at work and that "over a period of time," the continuous lifting and overhead work caused his injury.

Moreover, there was abundant medical evidence obtained prior to trial showing that whether Tomlin sustained a repetitive trauma

injury was at issue. Dr. Clare stated in a letter on September 18, 2002, "Although [Tomlin] did not sustain a single, isolated work-related injury, I feel he has experienced accumulative trauma that has resulted in the degenerative condition." Dr. Gammel opined in his August 13, 2003, report, "Tomlin's repetitive, heavy, over-head work duties as a drywall installer for thirty years resulted in and substantially contributed to the development of his right shoulder degenerative joint disease."

Thus, there was sufficient evidence prior to trial that Tomlin's injury may have been a result of repetitive trauma and Densberger and United were not misled by Tomlin's plead-ing a June 12, 2002, date of injury. Any variance between the pleading and the evidence here was immaterial, and Densberger and United's argument that the court erred in finding an injury date of November 8, 2002, because of such variance is without merit.

*Rule 11.*

Densberger and United contend that the trial court's deci-sion was not a reasoned decision in compliance with rule 11 of the Workers' Compensation Court, because the trial court did not explain (1) why it used the parties' stipulated average weekly wage as of June 12, 2002, if the date Tomlin suffered his accident was November 8 and (2) why medical expenses and mileage were awarded for expenses allegedly incurred prior to November 8. Rule 11(A) provides:

> All parties are entitled to reasoned decisions which contain findings of fact and conclusions of law based upon the whole record which clearly and concisely state and explain the rationale for the decision so that all interested parties can determine why and how a particular result was reached. The judge shall specify the evidence upon which the judge relies. The decision shall provide the basis for a meaningful appellate review.

The trial court stated in its award, "Given the stipulation of the parties relative to [Tomlin's] average weekly wage, i.e. $742.17, [he] would be entitled to $494.78 for each of the afore-mentioned weeks of temporary total disability." As to the med-ical bills and mileage, the trial court said, "The Court, having

reviewed the evidence (both expert and lay), is satisfied that the medical bills submitted by [Tomlin] as set forth in Exhibits 2 through 7 (the latter exhibit representing a summary of said bills) ought to be paid by [Densberger and United]." The court further stated that Tomlin "should also be paid for his mileage expense incurred in the medical treatment of his injury." We find that when the trial court's entire decision is considered, there has been compliance with rule 11.

*Medical Expenses and Mileage.*

Densberger and United argue that the award of medical expenses and mileage was error. The trial court ordered Densberger and United to pay the medical expenses set forth in exhibits 2 through 7 and the mileage expenses set forth in exhibit 8. The exhibits calculated both medical and mileage expenses incurred by Tomlin beginning on June 3, 2002. Densberger and United contend that they should not be liable for medical and mileage expenses incurred prior to November 8, 2002—the date of injury.

The date of injury for repetitive trauma cases is generally the date in which the evidence shows that the employee discontinued employment and sought medical treatment. See *Swoboda v. Volkman Plumbing,* 269 Neb. 20, 690 N.W.2d 166 (2004). Thus, the concept of "date of injury" in repetitive trauma cases must be conceded to be a bit of a necessary legal artifice, articulated by the appellate courts in order for repetitive trauma cases to be manageable within the statutory framework of an accident. Nonetheless, Neb. Rev. Stat. § 48-120(1) (Reissue 2004) provides: "The employer is liable for all reasonable medical, surgical, and hospital services . . . as and when needed, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment . . . ." "The only limitation on medical benefits set forth in § 48-120 is that the treatment be reasonable and that the compensation court has the authority to determine the necessity, character, and sufficiency of the treatment furnished." *Foote v. O'Neill Packing,* 262 Neb. 467, 474, 632 N.W.2d 313, 320 (2001). Because the Nebraska Workers' Compensation Act is to be broadly construed to accomplish the

beneficent purpose of the act, see *Foote, supra,* and given the language of § 48-120 quoted above, we find no rational reason for a rule precluding the award of medical expenses incurred before the date of accident in a repetitive trauma case—remembering that such date is often fortuitously established by when the employee seeks treatment and misses work for such. See *United Wisconsin Ins. Co. v. LIRC,* 229 Wis. 2d 416, 600 N.W.2d 186 (Wis. App. 1999) (employer's argument that it could not be liable for expenses incurred prior to date of injury was rejected, because date of injury is fixed by statutory definition and can be after onset of symptoms and treatment and because there is no support for proposition that worker must stop working before being eligible for benefits). Similarly, under Nebraska precedent, the date of injury for a repetitive trauma injury is fixed by case law, meaning that the employee can incur expenses before the "technical" date of injury. The evidence regarding Tomlin's medical and mileage expenses showed that such were reasonably necessary and related to his compensable injury. Therefore, the trial court did not err in allowing both medical and mileage expenses as stated in exhibits 7 and 8.

*Objections to Exhibits.*

Densberger and United argue that the trial court erred in failing to sustain its relevancy objections to exhibits 1, 2, and 5 through 8. Remembering that the Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence, we look to the substance of each of the exhibits. See *Baucom v. Drivers Mgmt., Inc.,* 12 Neb. App. 790, 686 N.W.2d 98 (2004). Exhibit 1 is Dr. Gammel's report, and exhibit 2 is Dr. Clare's opinion and progress notes. Exhibit 5 is Tomlin's medical records. Exhibit 6 is a letter from Tomlin's physical therapist to Dr. Clare regarding Tomlin's condition and the physical therapy objectives. Exhibit 7 is a "Medical Bills Summary," and exhibit 8 is Tomlin's mileage expenses.

As for exhibits 1, 2, 5, and 6, they are clearly relevant to Tomlin's injury and the trial court did not err in admitting them. Exhibit 7, the summary of Tomlin's medical bills, is also relevant, because he is asking for medical expenses to be paid as part of his compensation benefits. Moreover, exhibit 19 was

also a compilation exhibit of medical expenses. Exhibit 19 was admitted without objection and is substantially similar to exhibit 7. Thus, any error in admitting exhibit 7 could not prejudice Densberger and United. See *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997) (admitting testimony objected to which is substantially similar to evidence admitted without objection is not prejudicial error). Exhibit 8 is Tomlin's mileage expenses and is relevant here because in workers' compensation cases, travel expenses are compensable if they are shown to be reasonably necessary and related to the compensable injury. See *Pavel v. Hughes Brothers, Inc.*, 167 Neb. 727, 94 N.W.2d 492 (1959). We also remind Densberger and United of the longstanding rule that when an employee presents evidence of medical expenses from a work-related injury, a prima facie case of fairness and reasonableness has been made, causing the burden to shift to the employer to adduce evidence that the expenses are not fair and reasonable. See *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910 (1990). Therefore, Densberger and United's argument that the court erred in overruling the relevancy objections is without merit.

## CONCLUSION

We affirm in all respects the decision of the trial court, which decision was affirmed by the review panel.

AFFIRMED.