778 N.W.2d 504 (2009)
18 Neb. App. 202
Odilon VISOSO, also known as Adam Rodriguez, appellee,
v.
CARGILL MEAT SOLUTIONS, appellant.
No. A-09-339.
Court of Appeals of Nebraska.
December 8, 2009.
*508 James D. Hamilton and Amanda A. Dutton, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., Lincoln, for appellant.
Ryan C. Holsten and Travis Allan Spier, of Atwood, Holsten & Brown, P.C., L.L.O., Lincoln, for appellee.
SIEVERS and CASSEL, Judges, and HANNON, Judge, Retired.
SIEVERS, Judge.
This appeal presents the question of whether the employee's status as an illegal immigrant impacts his entitlement to temporary total disability and vocational rehabilitation under the Nebraska Workers' Compensation Act. Cargill Meat Solutions (Cargill) appeals from an order of a three-judge review panel for the Nebraska Workers' Compensation Court. The review panel affirmed the trial court's (1) running award to Odilon Visoso for temporary total disability, (2) order that Cargill was to pay $1,756 to the Schuyler Clinic, and (3) finding and order that Visoso was entitled to mileage reimbursement of $1,029.27. The review panel reversed the trial court's finding that because of his illegal alien immigrant status, Visoso was not entitled to vocational rehabilitation. We affirm.

FACTUAL BACKGROUND
On May 9, 2006, Visoso, also known as Adam Rodriguez, was working for Cargill in Schuyler, Nebraska. On that date, Visoso sustained injuries to his neck and body when a slab of meat fell from a hook and struck him on the back of the head and shoulder. Visoso sought medical treatment from the time of the injury. Treatment was initially conservative and included physical therapy, chiropractic services, pain medication, and steroid injections. Visoso eventually underwent an anterior cervical interbody diskectomy and arthrodesis surgery on October 4, 2007.
From the time of his May 9, 2006, work accident until his October 4, 2007, surgery, Visoso continued to work at Cargill on light duty. Visoso's employment was terminated in late October 2007 because he was an illegal, undocumented worker. As of the date of trial, January 3, 2008, Visoso testified that he had not been medically released to return to work following his October 2007 surgery.
We note that Visoso went by the name "Adam Rodriguez" when he applied for and obtained employment with Cargill, during the course of his employment with Cargill, while seeking medical treatment for his work-related injuries, and when he originally filed his workers' compensation lawsuit. It is undisputed that during the time of his employment with Cargill and at the time of trial, Visoso was an illegal, undocumented alien. Visoso testified that he came from Mexico and that he illegally entered the United States in 2002. Cargill claims to have been unaware of Visoso's illegal status until October 2007, although he revealed such status on August 21, 2007, when his deposition was taken in this case.

PROCEDURAL BACKGROUND
Visoso filed his petition on November 22, 2006, alleging that on May 9, he sustained *509 personal injury in an accident arising out of and in the course of his employment by Cargill. Visoso alleged that the neck and body injuries occurred when the slab of meat fell on his head. Visoso alleged that the matters in dispute were as follows: medical costs; temporary total disability; mileage relating to his injury; and, if he had reached maximum medical improvement by the time of trial, the extent of his permanent impairment and disability and his entitlement to vocational rehabilitation.
Cargill filed its answer denying the allegations in Visoso's petition. Cargill alleged that Visoso's disability, if any, did not arise out of or in the course of his employment by Cargill. Cargill further alleged that it has made payment to or on behalf of Visoso of all medical, surgical, and hospital expenses and all compensation benefits to which Visoso may be entitled or for which Cargill may be liable.
The workers' compensation court trial judge's award was filed on April 2, 2008. The judge found that on May 9, 2006, Visoso was employed by Cargill as a laborer, and that while engaged in the duties of his employment, he suffered injuries to his cervical spine as a result of an accident arising out of and in the course of his employment. The judge found that a front quarter of beef fell from a conveyor and struck Visoso on the rear of his head, neck, and shoulders. The judge found that Visoso's injury was initially diagnosed as a cervical strain but later as "annular tears at C4-5, C5-6 and cervical spondylosis." The judge held that Visoso is entitled to benefits as provided under the Nebraska Workers' Compensation Act.
The judge determined that at the time of the accident and injury, Visoso was receiving an average weekly wage of $514.56 and thus was entitled "to benefits of $343.04 per week from October 4, 2007, through the date of trial and for so long in the future as [Visoso] shall remain temporarily totally disabled and further order of the Court." We assume the last phrase in the foregoing quote from the trial judge's decision was referencing Davis v. Crete Carrier Corp., 274 Neb. 362, 740 N.W.2d 598 (2007) (employer may not unilaterally terminate workers' compensation award of indefinite temporary total disability benefits absent modification of award of benefits). The trial judge stated that he relied upon the opinions of Dr. Ric Jensen regarding Visoso's continuing temporary total disability, as well as Visoso's testimony, in making such finding. Cargill was ordered to pay medical expenses on Visoso's behalf to numerous medical providers, including the Schuyler Clinic ($1,756). Cargill was also ordered to reimburse Visoso for mileage in the amount of $1,029.27. The judge found that Cargill should pay future medical expenses reasonably necessary for evaluation and treatment of Visoso's cervical spine injury. The judge specifically found that Visoso had not reached maximum medical improvement. The judge also found that Visoso will not be entitled to vocational rehabilitation services because he is an illegal, undocumented worker.
On April 16, 2008, Cargill filed its application for review by a three-judge review panel. Cargill's application alleged that the court erred in (1) finding that Visoso was temporarily totally disabled from the date of trial for so long in the future as Visoso shall remain temporarily disabled and until further order of the court, (2) ordering payment of $1,756 to the Schuyler Clinic, and (3) ordering mileage reimbursement of $1,029.27 to Visoso.
In its order filed on February 27, 2009, the review panel noted that Visoso cross-appealed the trial court's finding that Visoso will be ineligible for vocational rehabilitation services upon achieving maximum *510 medical improvement. The review panel affirmed the trial court's award in all respects except for the trial court's determination that Visoso is not entitled to vocational rehabilitation services. The review panel reversed such determination as premature, finding:
The time to rule on [Visoso's] entitlement to vocational rehabilitation services is after [he] reaches maximum medical recovery, with his impairments and restrictions known, with his then current immigration status known, and with a contemporaneous finding made about whether or not he plans to return to his native country.
Cargill now appeals the review panel's decision.

ASSIGNMENTS OF ERROR
Cargill alleges that (1) the trial court erred in finding, and the review panel erred in affirming, that Visoso was entitled to a running award of temporary total disability; (2) the trial court erred in ordering, and the review panel erred in affirming, payment of $1,756 to the Schuyler Clinic; (3) the trial court erred in ordering, and the review panel erred in affirming, mileage reimbursement of $1,029.27 to Visoso; and (4) the review panel erred in reversing the trial court's finding that Visoso was not entitled to vocational rehabilitation.

STANDARD OF REVIEW
Pursuant to Neb.Rev.Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is no sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Davis v. Crete Carrier Corp., 274 Neb. 362, 740 N.W.2d 598 (2007).
Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. Id. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. Id.

ANALYSIS

Temporary Total Disability.
Cargill argues it was error to find that Visoso was temporarily totally disabled from the date of trial for so long in the future as he shall remain temporarily disabled. Cargill argues that temporary disability is available during the period the employee is unable to work because of the accident, and in this case, Visoso is not able to work because he is an illegal immigrant who cannot work legally within the United States. Thus, Cargill argues that Visoso is not entitled to a running award of temporary total disability.
Cargill does not claim that Visoso's illegal alien status disqualifies him entirely from benefits under the Nebraska Workers' Compensation Act. Rather, Cargill asserts that such status prevents him from receiving temporary total disability and vocational rehabilitation. Nonetheless, we believe our analysis is advanced by consideration of the scope of the Nebraska Workers' Compensation Act. The Legislature enacted the Nebraska Workers' Compensation Act in order to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease. Foote v. O'Neill Packing, 262 Neb. 467, 632 N.W.2d 313 (2001). And the Nebraska Supreme Court has consistently *511 given the Nebraska Workers' Compensation Act a liberal construction to "`"carry out justly the spirit of the Nebraska Workers' Compensation Act."'" 262 Neb. at 473, 632 N.W.2d at 320.
For purposes of the Nebraska Workers' Compensation Act, the definition of "employee" or "worker" includes: "Every person in the service of an employer who is engaged in any trade, occupation, business, or profession as described in section 48-106 under any contract of hire, expressed or implied, oral or written, including aliens and also including minors." Neb.Rev.Stat. § 48-115(2) (Cum.Supp. 2008) (emphasis supplied). However, the Legislature did not further define "alien." "In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous." Big John's Billiards v. Balka, 260 Neb. 702, 707, 619 N.W.2d 444, 448 (2000). Black's Law Dictionary 84 (9th ed. 2009) defines the term "alien" as follows:
A person who resides within the borders of a country but is not a citizen or subject of that country; a person not owing allegiance to a particular nation.... In the United States, an alien is a person who was born outside the jurisdiction of the United States, who is subject to some foreign government, and who has not been naturalized under U.S. law.
Thus, under its plain and ordinary meaning, work status is not involved in the definition of "alien." In Economy Packing v. Illinois Workers' Comp., 387 Ill.App.3d 283, 901 N.E.2d 915, 327 Ill.Dec. 182 (2008), the court held that the plain meaning of "aliens" in the Illinois Workers' Compensation Act includes not only foreign-born citizens that can legally work in the United States, but also those that cannot. After giving § 48-115(2) a liberal construction, we find that although Visoso cannot legally work in the United States because of his immigration status, he is nonetheless an "employee" or "worker" who, as a general proposition, is covered by the Nebraska Workers' Compensation Act. If it was the intent of the Nebraska Legislature to exclude illegal aliens from the definition of covered employees or workers, it could have easily included a modifier doing so in the statute, but the Legislature did not, and has not, done so. We now turn to Visoso's running award of temporarily total disability from the date of trial.
The Nebraska Supreme Court has defined temporary disability as "the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident." Frauendorfer v. Lindsay Mfg. Co., 263 Neb. 237, 245, 639 N.W.2d 125, 134-35 (2002). The trial court awarded Visoso temporary total disability benefits from October 4, 2007, the date of surgery, through the date of trial, January 3, 2008, and for so long in the future as Visoso shall remain temporarily totally disabled. In a followup appointment on November 14, 2007, Dr. Jensen ordered that Visoso should remain off work until a followup appointment 6 weeks later, at which time Visoso would be reevaluated. And in a letter to Dr. Thomas Wong dated November 20, 2007, Dr. Jensen stated:
For now, I will plan to follow up with [Visoso] in approximately 1 month for further assessment and x-ray imaging of his cervical spinal fusion construct. In the meantime, [Visoso] will remain in an off work status until he is re-evaluated. At that time I may consider returning *512 him to employment on a limited basis.
Dr. Jensen's opinions are the only expert medical testimony concerning Visoso's postoperative work status contained in the record. Visoso testified that during his final followup appointment on December 19, Dr. Jensen did not release him to perform work of any kind. There is no evidence in the record that Visoso was given a medical release to return to work, and his testimony was that he was not. Thus, on this evidence, the trial judge was not clearly wrong in finding that Visoso's injury was a cause of his inability to work as of the time of trial. Even though Visoso's illegal work status would have prevented him from working, Visoso was nonetheless entitled to temporary total disability benefits because one of the causes of his inability to return to work was his work injury.

Payment to Schuyler Clinic.
Cargill argues it was error to order payment of $1,756 to the Schuyler Clinic because Visoso was treated there for a plethora of conditions that were not work related. These bills were received in evidence without objection, and thus the question is simply what did they prove and how did their receipt in evidence affect the burden of proof concerning medical expenses. In Tomlin v. Densberger Drywall, 14 Neb.App. 288, 301-02, 706 N.W.2d 595, 608 (2005), we said:
Neb.Rev.Stat. § 48-120(1) (Reissue 2004) provides: "The employer is liable for all reasonable medical, surgical, and hospital services ... as and when needed, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment...." "The only limitation on medical benefits set forth in § 48-120 is that the treatment be reasonable and that the compensation court has the authority to determine the necessity, character, and sufficiency of the treatment furnished." Foote v. O'Neill Packing, 262 Neb. 467, 474, 632 N.W.2d 313, 320 (2001).... [T]he Nebraska Workers' Compensation Act is to be broadly construed to accomplish the beneficent purpose of the act, see Foote, supra....
And "[w]hen an employee in a workers' compensation case presents evidence of medical expenses resulting from injury, he or she has made out a prima facie case of fairness and reasonableness, causing the burden to shift to the employer to adduce evidence that the expenses are not fair and reasonable." Dawes v. Wittrock Sandblasting & Painting, 266 Neb. 526, 547, 667 N.W.2d 167, 187 (2003), overruled on other grounds, Kimminau v. Uribe Refuse Serv., 270 Neb. 682, 707 N.W.2d 229 (2005). See, also, Tomlin v. Densberger Drywall, supra. And "`[t]here must, of course, be a causal relationship between the original compensable injury and the medical care.'" Zitterkopf v. Aulick Indus., 16 Neb.App. 829, 832, 753 N.W.2d 370, 374 (2008) (quoting 5 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 94.03[1] at 94-38 n. 2 (2007)).
In Zitterkopf v. Aulick Indus., supra, this court found that when viewed in the light most favorable to the successful partythe employeethe evidence showed that the drug Provigil was medically necessary for at least two purposes: (1) to treat the side effects of pain medication necessitated by the compensable injury and (2) to treat the employee's unrelated sleep apnea. This court held that the medication's use was in part for the treatment of the employee's work-related condition and that therefore the trial judge was not clearly wrong in finding that the employer must compensate for its expense. *513 Accordingly, the fact that the disputed doctor visit encompassed medical matters in addition to the work injury does not, by itself, mean that the costs of the visits were not compensable.
The Schuyler Clinic reports were received into evidence without objection. We will address each clinic visit which Cargill claims was not work related.
 9/11/06: Cargill states that "the doctor assessed diabetes." However, the report stated that Visoso went to the clinic "complaining of back and head pain after 100 lb of meat fell on top of his head." In addition to the diabetes assessment, the doctor also assessed neck pain.
 9/22/06: Cargill states that Visoso presented for a "follow up with chest pain," also complaining of abdominal pain. However, the report stated that Visoso "continues to have pain in his neck after 100 lb of meat fell on top of his head," and Visoso was assessed with neck pain.
 9/25/06: Cargill states that Visoso followed up with regard to chest pain, for which he had been admitted to the hospital, and was diagnosed with a nonfunctioning gallbladder. However, that report stated that Visoso was also assessed with neck pain and noted that Visoso had an appointment to see a spine doctor.
 9/27/06: Cargill states the primary diagnosis was "gallbladder disease." However, the report stated that Visoso followed up with Dr. Wong for "neck pain which is work related." Again, Visoso was assessed with neck pain.
 10/24/06: Cargill states the primary diagnosis was peptic disease. However, Dr. Wong also assessed Visoso with cervical disk disease. Additionally, Dr. Wong spoke with Visoso about a balance problem which was thought to be related to the cervical disk problem.
 11/22/06: Cargill states that "the only diagnosis was hyperglycemia." However, the visit was also a followup after receiving a steroid injection for his neck injury.
 5/23/07: Cargill states that the visit primarily concerned Visoso's diabetes and elevated liver enzymes. However, Dr. Wong noted that Visoso continued to have pain in his back and neck and assessed him with "[c]hronic neck pain and low back pain."
 6/20/07, 7/18/07, and 8/15/07: Cargill states those visits related to Visoso's diabetes. However, in the reports for each of those visits, Dr. Wong stated that Visoso continued to have pain in his neck and back.
Through the medical records from the controverted visits with Dr. Wong, Visoso clearly made out a prima facie case of fairness, reasonableness, and necessity because each visit included evaluation, treatment, or followup from his work injury. Therefore, the burden shifted to Cargill to adduce evidence that the expenses are not fair and reasonable. See Dawes v. Wittrock Sandblasting & Painting, 266 Neb. 526, 667 N.W.2d 167 (2003), overruled on other grounds, Kimminau v. Uribe Refuse Serv., 270 Neb. 682, 707 N.W.2d 229 (2005). The trial judge implicitly found that Cargill did not meet its burden. Whether the medical services were reasonably necessary and related to the compensable work-related injury is a question of fact which is to be determined by the trial judge. See Davis v. Crete Carrier Corp., 274 Neb. 362, 740 N.W.2d 598 (2007). The trial judge's decision to order Cargill to make payment of $1,756 to the Schuyler Clinic was not clearly wrong, and thus we affirm such decision.

*514 Mileage Reimbursement.

Cargill argues it was error to order mileage reimbursement of $1,029.27 to Visoso, because Visoso had not proved that such expenses were incurred as a result of the work accident. In workers' compensation cases, travel expenses are compensable if they are shown to be reasonably necessary and related to the compensable injury. Tomlin v. Densberger Drywall, 14 Neb.App. 288, 706 N.W.2d 595 (2005). Again, whether the travel expenses were reasonably necessary and related to the compensable injury is a question of fact which is to be determined by the trial judge. See Davis v. Crete Carrier Corp., supra. After reviewing the mileage expenses in evidence, we find that the trial judge's decision to order Cargill to pay mileage reimbursement of $1,029.27 to Visoso was not clearly wrong, and thus we affirm such decision.

Vocational Rehabilitation.
Cargill argues that the review panel erred in reversing the trial court's finding that Visoso, an illegal immigrant, was not entitled to vocational rehabilitation. When as a result of the injury an employee is unable to perform suitable work for which he or she has previous training or experience, he or she is entitled to vocational rehabilitation services. See Neb.Rev.Stat. § 48-162.01(3) (Cum.Supp.2008). The purpose of vocational rehabilitation under workers' compensation is to restore an injured employee to suitable gainful employment. Ortiz v. Cement Products, 270 Neb. 787, 708 N.W.2d 610 (2005). See, also, § 48-162.01(3). In order to effectuate this purpose, the employee must be eligible and willing to return to some form of employment. Ortiz v. Cement Products, supra. It is important to recall that any determination regarding an employee's entitlement to vocational rehabilitation is made at the time of maximum medical improvement. See Green v. Drivers Mgmt., Inc., 263 Neb. 197, 639 N.W.2d 94 (2002) (without finding of permanent medical impairment, there can be no permanent restrictions, and without impairment or restrictions, there can be no disability or labor market access loss; absent permanent impairment or restrictions, worker is fully able to return to any employment for which he or she was fitted before accident, including occupations held before injuries occurred). As § 48-162.01(3) indicates, if one is able to return to work, he or she is not entitled to vocational rehabilitation.
In Ortiz v. Cement Products, 270 Neb. at 791, 708 N.W.2d at 613, the only case in Nebraska dealing with vocational rehabilitation benefits for illegal aliens, the Nebraska Supreme Court said:
At trial, Ortiz testified that he will not be returning to Mexico, but, rather, intended to remain in this country, where he may not be lawfully employed because of his illegal status. See 8 U.S.C. § 1324a (2000). Awarding Ortiz vocational rehabilitation services in light of his avowed intent to remain an unauthorized worker in this country would be contrary to the statutory purpose of returning Ortiz to suitable employment. Therefore, we hold that based upon the facts of this case, Ortiz is not entitled to vocational rehabilitation services.
There was no evidence that Visoso intends to remain an unauthorized worker in this country, and thus the instant case is factually distinguishable from Ortiz v. Cement Products, supra.
The trial judge found that Visoso "will not be entitled to vocational rehabilitation services as he is an illegal undocumented worker." The review panel reversed, holding:

*515 The time to rule on [Visoso's] entitlement to vocational rehabilitation services is after [he] reaches maximum medical recovery, with his impairments and restrictions known, with his then current immigration status known, and with a contemporaneous finding made about whether or not be plans to return to his native country. Green v. Drivers Mgmt., Inc., 263 Neb. 197, 639 N.W.2d 94 (2002).
We agree with that holding and rationale. The trial judge's finding that Visoso will not be entitled to vocational rehabilitation is premature. See Green v. Drivers Mgmt., Inc., supra. Whether illegal alien status prevents an award of vocational rehabilitation because such status prohibits working in this country is a question that we need not reach.

CONCLUSION
For the reasons stated above, we affirm the findings of the three-judge review panel for the Nebraska Workers' Compensation Court.
AFFIRMED.