RODNEY UNDERWOOD, APPELLANT AND CROSS-APPELLEE, V.
EILERS MACHINE & WELDING, INC., AND FEDERATED MUTUAL
INSURANCE COMPANY, APPELLEES AND CROSS-APPELLANTS.

575 N.W. 2d 878

Filed March 10, 1998.    No. A-97-670.

T.J. Hallinan, of Cobb & Hallinan, P.C., for appellant.

Todd R. McWha, of Murphy, Pederson, Waite & McWha, for appellees.

HANNON, MUES, and INBODY, Judges.

INBODY, Judge.

This is an appeal and cross-appeal of a workers' compensation case in which the Workers' Compensation Court review panel affirmed in part the decision by the trial judge and remanded the cause in part for clarification. For the reasons set forth herein, we affirm the judgment of the review panel in its entirety.

## STATEMENT OF FACTS

On or about July 9, 1990, Rodney Underwood fell from the back of a moving pickup truck and sustained a serious head injury. At that time, Underwood was in the course and scope of his employment as a punch-press and shear-machine operator with Eilers Machine & Welding, Inc. (Eilers Machine), located in Lexington, Nebraska. Underwood was transported to Bryan Memorial Hospital in Lincoln, Nebraska, where he underwent a craniotomy to remove an epidural hematoma. On July 24, Underwood was transferred to the Madonna Rehabilitation Hospital for rehabilitation. On July 31, Underwood was readmitted to Bryan for treatment of thrombophlebitis (blood clots) that had developed in his left leg and returned to Madonna on August 7. While at Madonna, Underwood received extensive rehabilitation therapy, which involved relearning and reestablishing such basic skills as communication, personal hygiene, and walking.

Underwood was released from Madonna on October 12, 1990. He returned to work as a full-time employee for Eilers Machine in July 1991 and has remained in that status for all times relevant.

Underwood has had three brain seizures since the accident, which are uncontrovertedly related to the original accident. The seizures, however, are currently controlled through medication. The last seizure occurred on May 28, 1994, when Underwood did not take his medication. Underwood also has recurring venous system problems in his left leg, relating to the thrombophlebitis and resulting in an ongoing ulcerous condition near his left ankle, also uncontrovertedly related to the accident.

On January 20, 1992, Dr. Gene Montgomery of Madonna assigned Underwood a 10-percent whole-body impairment. On

August 18, 1995, Underwood brought the instant action, alleging he was totally and permanently disabled as a result of the July 9, 1990, accident.

## FINDINGS AND HOLDINGS
## OF COURTS BELOW

*Trial Court.*

The trial court awarded Underwood a 20-percent loss of earning capacity as a result of his head injury. The trial court further concluded that the symptomology of Underwood's left leg was limited to that member, rather than his body as a whole, and awarded him a 15-percent permanent partial disability for the injury to "his left lower extremity."

*Review Panel.*

The review panel affirmed the award of a 20-percent loss of earning capacity for the head injury and further affirmed the finding that the leg injury was not a whole-body injury. However, the review panel remanded the matter to the trial court to clarify whether the 15-percent permanent partial disability award was for Underwood's left leg or left foot. Underwood appealed from the review panel decision before any further action was taken by the trial court.

## ASSIGNMENTS OF ERROR

Underwood makes three assignments of error. He first asserts the trial court erred in finding that he suffered only a 20-percent loss of earning capacity as a result of his job-related injury. Underwood's second assignment of error is that the trial court erred in failing to find the venous system condition in his left leg to be a whole-body impairment instead of a scheduled injury to a member. Finally, Underwood asserts that if the trial judge was correct in finding the venous system condition in his left leg to be a scheduled injury, the review panel erred in remanding the question of whether the 15-percent permanent partial disability was limited to his foot or encompassed his entire leg.

Eilers Machine, in its cross-appeal, argues that Underwood experienced no loss of earning capacity and that, accordingly, the court erred in finding a 20-percent loss of earning capacity.

## STANDARD OF REVIEW

A jurisdictional question not involving a factual dispute is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by the inferior courts. *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996).

In a workers' compensation case, the findings of fact by the trial judge have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996). In testing the sufficiency of the evidence to support findings of fact, the evidence must be considered in the light most favorable to the successful party. *Id.*

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), a judgment, order, or award of the Workers' Compensation Court will not be modified, reversed, or set aside if there is sufficient competent evidence in the record to warrant the making of the order, judgment, or award. *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997).

## ANALYSIS

*Jurisdiction.*

An appellate court has not only the power but the duty to determine whether it has jurisdiction over the matter before it. *State v. Wieczorek*, 252 Neb. 705, 565 N.W.2d 481 (1997). Accordingly, we must first determine whether this court has jurisdiction to hear this appeal of a judgment of the Workers' Compensation Court, after review, when that judgment involves both an order of affirmance and a remand for clarification. As previously stated, the review panel affirmed both the trial court's award of a 20-percent loss of earning capacity for the head injury and the trial court's finding that the leg injury was not a whole-body injury. However, the review panel remanded the matter for clarification as to whether the 15-percent perma-

nent partial disability award was for Underwood's left leg or left foot.

Neb. Rev. Stat. § 25-1902 (Reissue 1995) provides for three types of appealable final orders: (1) an order affecting a substantial right which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made upon summary application in an action after a judgment is rendered. A workers' compensation case is a "special proceeding" for purposes of § 25-1902. *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995); *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994). The issue thus becomes whether the review panel's decision affected a substantial right of Underwood. A "substantial right" is an essential legal right, not a mere technical right. A substantial right is affected if the order appealed from affects the subject matter of the litigation, such as diminishing a claim or defense that was available prior to the order. *Currie v. Chief School Bus Serv.*, 250 Neb. 872, 553 N.W.2d 469 (1996). We conclude that an order affirming a determination of loss of earning capacity is an order affecting a substantial right. Compare *Hull, supra* (order vacating judgment in favor of claimant and dismissing one party was appealable final order, notwithstanding remand), and *Pearson, supra* (order vacating dismissal and remanding for trial is final and appealable order).

Because this case involves an order affecting a substantial right after a special proceeding, this court has jurisdiction, even though a part of the order appealed from involves a remand for clarification. See *Jarrett v. Eichler*, 244 Neb. 310, 313, 506 N.W.2d 682, 685 (1993) ("[w]hether an order is final and appealable does not depend upon whether that order completely disposes of the action"). We recognize that such a result has the potential for fragmenting the appellate process in some cases, but it is nonetheless mandated under the present state of the law. Moreover, in this and other workers' compensation cases, prompt resolution is consistent both with the general principles of judicial economy and with the "beneficent purposes" of the Nebraska Workers' Compensation Act. Since we have jurisdiction, we will proceed to review the assignments of error.

*Loss of Earning Capacity.*

Both parties challenge the trial court's determination that Underwood suffered a 20-percent loss of earning capacity. Underwood argues that his lost earning capacity is in the 60- to 90-percent range, while Eilers Machine argues that Underwood lost no earning capacity. Their positions are opposite sides of the same coin and will accordingly be resolved concurrently.

■■■■ Neb. Rev. Stat. § 48-121(2) (Reissue 1993) provides an award for diminished "earning power" of an injured employee, but the statute does not expressly define earning power. As explained in *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 546, 288 N.W.2d 482, 485 (1980):

" 'Earning power['] . . . is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the workman to earn wages in the employment in which he is engaged or for which he is fitted. . . ."

The determination of loss of earning power is a question of fact. See, *Sidel, supra*; *Haney v. Aaron Ferer & Sons*, 3 Neb. App. 14, 521 N.W.2d 77 (1994).

■■■■ There is no numerical formula for determining a worker's earning power following a whole-body injury, nor is such synonymous with either wages or loss of physical functions. *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987). Moreover, the compensation court need not depend on expert testimony to determine the extent of disability, but instead may rely upon the claimant's own testimony. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Haney, supra.*

In this case, Underwood presented expert testimony purporting to establish that his lost earning capacity was between 60 and 90 percent, and Eilers Machine presented expert testimony purporting to establish that Underwood had lost no earning capacity. The trial court, faced with sharply conflicting expert testimony, rejected both, as it is entitled to do. See, e.g., *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 660, 558 N.W.2d 564, 571 (1997) ("[i]t is the role of the compensation court as the trier of fact to determine which, if any, of the expert witnesses to believe"). The trial court concluded that it was

not inclined to agree . . . that the plaintiff's loss of earning capacity is in the neighborhood of 60 per cent to 90 per cent . . . . However, that is not to say that the Court therefore is in agreement that the plaintiff's accident and injury has resulted in absolutely no loss of earning capacity . . . . The Court is certain that the plaintiff suffers from a permanent impairment . . . that manifests itself in his employment . . . .

After reviewing the evidence, the trial court concluded that Underwood had suffered a 20-percent loss of earning capacity.

The issue on appeal, accordingly, is whether the trial judge's assessment of a 20-percent loss of earning capacity is supported by Underwood's testimony and other evidence in the record. In portions of his deposition read into the record, Underwood testified that he is not limited in the performance of his job duties, can sit and walk without hindrance, has no hearing or vision problems, and had no current pain within the previous year that affected his performance. These aspects of Underwood's testimony are supported by other factors in the record: Underwood returned to full-time work at Eilers Machine, in the same position, in 1991 and has remained there since. His pre-injury wage was $6.25 per hour; in 1993 his wage raised to $6.75 per hour and in 1994 to $7 per hour, and his wage at the time of the June 17, 1996, compensation court hearing was $7.50 per hour. Brian Eilers, president and owner of Eilers Machine, testified that Underwood's raises were merit raises, not automatic increases. " 'If, after injury, an employee receives the same or higher wages than before the injury, *it is indicative, although not conclusive*, of the fact that his earning power has not been impaired.' " (Emphasis supplied.) *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 546, 288 N.W.2d 482, 485 (1980). That evidence is arguably sufficient to support Eilers Machine's expert's opinion that there was no lost earning capacity.

However, as the *Sidel* court recognized, the mere fact that an employee is still employed and still paid the same or better does not, of itself, mean he has not experienced some loss of earning capacity. See, also, *Schmid v. Nebraska Intergov. Risk Mgt. Assn.*, 239 Neb. 412, 416, 476 N.W.2d 243, 246 (1991) (" ' "the mere fact that after the injury the employee receives, or

is offered, his former wages, or a larger sum, does not necessarily preclude recovery of compensation under the various workmen's compensation statutes" ' "). There is credible evidence in the record, including Underwood's testimony, supporting the trial court's conclusion that Underwood has suffered some physical impairment. For the rest of his life, he must take medicine to prevent seizures and must wear a compression stocking to prevent complications from his thrombophlebitis, both requirements arising from a compensable injury. There is also evidence that Underwood is somewhat slower and less productive in his work, and less capable of obtaining other work in the open labor market.

In view of this record and the applicable standard of review, we conclude that the Nebraska Workers' Compensation Court, as the sole judge of a witness' credibility and the weight to be given a witness' testimony, was not clearly erroneous in concluding that Underwood had suffered a 20-percent loss of earning capacity. We therefore affirm that portion of the award.

*Venous System Condition in Left Lower Extremity.*

Underwood next asserts the trial court erred in concluding that the venous system condition in his left leg and the ulcerous condition of his left ankle should be deemed injuries to a scheduled member rather than impairment to his body as a whole. Determining whether a disability is limited to a scheduled member or is a whole-body injury, for purposes of § 48-121, is a question of fact. See *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983).

There was sufficient evidence in the record to support the trial court's conclusion that "the plaintiff's leg symptomology is limited to his leg rather than his body as a whole." Specifically, the trial court chose to accept the opinion of Dr. Patrick Judson, a medical expert for Eilers Machine, which expressly concluded that this condition was limited to the left lower extremity and was not a whole-body injury. Because the trial court is free to accept or reject an opinion of an expert witness, see *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997), and in light of the applicable standard of review, we cannot say this portion of the decision is clearly erroneous. Accordingly, it will not be disturbed.

*Remand on Issue of Extent of Impairment of Left Lower
Extremity.*

Finally, Underwood asserts the review panel erred in remanding the matter for clarification of "an internal inconsistency" as to whether the impairment to the left lower extremity, if properly deemed a scheduled injury, was to the left foot or the left leg.

█ A remand was clearly within the review panel's statutory authority. Neb. Rev. Stat. § 48-179 (Reissue 1993) provides the review panel with the authority to "affirm, modify, reverse, or remand" a trial court's decision. Moreover, because both the review panel and this court are precluded from substituting their views of the facts so long as there is evidence in the record supporting the factual conclusions of the trial court, see *Larson v. Hometown Communications, Inc.*, 3 Neb. App. 367, 526 N.W.2d 691 (1995), it would have been error for the review panel to make a factual finding as to the extent and nature of the impairment. The remand was accordingly an appropriate and proper exercise of the powers accorded the review panel.

## CONCLUSION
For the reasons set forth above, both the appeal by Underwood and the cross-appeal by Eilers Machine must fail. The findings and holdings of the Workers' Compensation Court review panel are accordingly affirmed in their entirety.

AFFIRMED.