RANDY DAVIS, APPELLANT, V. GOODYEAR TIRE & RUBBER COMPANY AND LIBERTY MUTUAL INSURANCE CORP., APPELLEES.

696 N.W.2d 142

Filed April 22, 2005. No. S-04-861.

Dallas D. Jones and Tracy L. Stoehr, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellant.

Anne E. Winner, of Keating, O'Gara, Davis & Nedved, P.C., L.L.O., for appellees.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

The plaintiff, Randy Davis, was injured as a result of an accident arising out of and in the course of his employment with Goodyear Tire & Rubber Company (Goodyear). Davis was able to continue working at Goodyear, but with physical restrictions, and he filed a petition for workers' compensation benefits. At trial, the parties stipulated to the compensability of the injury and submitted the amount of Davis' damages to the single judge. The court-appointed vocational rehabilitation specialist had opined that Davis had suffered a 25- to 30-percent loss of earning power if he was able to continue working at Goodyear, but a 60- to 70-percent loss of earning power if Davis lost his job. Based on

this opinion, the single judge concluded that Davis had suffered a 27.5-percent loss of earning power and awarded benefits accordingly. The issue presented is whether the single judge erred in basing his determination of Davis' loss of earning power on Davis' continued employment with Goodyear.

## BACKGROUND

On October 31, 2000, Davis was employed by Goodyear as a shop mechanic and suffered an injury to his lower back while trying to lift one end of a heavy machine. This was apparently an aggravation of a preexisting low-back condition, and the parties stipulated that this event was compensable. Davis subsequently suffered a scheduled member injury in an unrelated incident that is not relevant to this appeal.

The October 31, 2000, accident and injury were found by the single judge to result in a 10-percent permanent impairment to the body as a whole. The single judge found that Davis had suffered permanent physical restrictions: never lifting greater than 50 pounds; not lifting more than 20 pounds repetitively; and avoiding prolonged bending, stooping, squatting, or kneeling. The single judge noted Davis' testimony that he was abiding by these restrictions. The judge also noted the testimony of the engineering manager for the Lincoln, Nebraska, plant where Davis was employed that Davis' performance had been effective and that there was no reason to believe Davis would be laid off.

Davis was found to have reached maximum medical improvement on September 22, 2001. Steven Kuhn, the court-appointed vocational rehabilitation specialist, evaluated Davis' loss of earning power, concluding as follows:

> Davis's ability to perform work for Goodyear Tire and Rubber has been impacted by his work related injury and the subsequent physical restrictions and limitations. Prior to his injury . . . Davis was able to preform [sic] the full range of job duties associated with various Maintenance Mechanic positions. He is now limited in the type of the positions he preforms [sic] and to the number of hours he works.
>
> While maintaining his employment at Goodyear Tire and Rubber . . . Davis has a loss of access to employment of 60 percent and a minimal loss of wage earning ability. However

if he were to leave Goodyear Tire and Rubber for any reason and attempt to obtain employment in the general labor market his loss of access to employment would be 35 to 40 percent. His loss of access to employment will decreased [sic] the type of positions he is able to preform [sic] limiting him to lower skilled positions that typically pay less.

It is the opinion of this Rehabilitation Consultant based upon my education, training and work experience within a reasonable degree of vocational certainty that . . . Davis does have a loss of earning capacity due to his work related injury of October 31, 2000.

If . . . Davis is able to maintain his position with Goodyear Tire and Rubber his loss of earning capacity would be 25 to 30 percent.

If . . . Davis was unable to maintain his position at Goodyear Tire and Rubber [and] were to acquire other alternative employment based upon transferable skills his loss of earning capacity would be 60 to 70 percent.

If . . . Davis were able to take advantage of vocational services to increase his skills his loss of earning capacity would be 40 to 50 percent.

The single judge concluded that Davis' loss of earning power was 27.5 percent. The single judge first found that the later opinion of a 40- to 50-percent loss of earning power was speculative at best, and the single judge rejected that opinion, because Davis was not entitled to vocational rehabilitation at the time of the award. The single judge also rejected Kuhn's opinion regarding Davis' loss of earning power should he be unable to retain his employment at Goodyear. The single judge noted the "uncontradicted testimony in this case" that based upon Davis' seniority, it was not probable that he would lose his job. The single judge stated that "[t]he focus is not solely on plaintiff's present job at Goodyear, but his present job is part of the entire set of jobs available to him in the Lincoln, Nebraska job market." The single judge concluded that

the pertinent analysis in cases of this type, is whether plaintiff is in possession of real, long term bona fide employment, which constitutes part of the entire marketplace of jobs (in

this case, the Lincoln, Nebraska area) which plaintiff could perform given his particular physical restrictions, acquired skill, and present training. With respect to whether a particular job at hand should be excluded from the relevant job market, the question is, whether the particular job which plaintiff has is of the type which constitutes "make work," "artificial," or an "odd-lot" type of employment. If so, the job should be excluded from the marketplace of jobs to be used in the analysis. Clearly, in this case, there is no evidence of such, and the job which plaintiff is actually performing as modified, must be considered as a part of the analysis leading to a determination of plaintiff's loss of earning power. In that regard, I find that . . . Kuhn's opinion that plaintiff has suffered a loss of earning power of between 25 and 30 percent is not the result of a specific focus or overemphasis placed upon any one job and is a valid analysis containing no speculative criteria.

Based upon the testimony, exhibits, and reports identified above, it is this Courts [sic] own independent finding that within the range provided by . . . Kuhn, plaintiff has suffered a 27.5 percent loss of earning power as a result of the accident and injury of October 31, 2000.

Based on that finding, the single judge awarded Davis the sum of $159.03 per week for 296½ weeks of permanent partial disability measured as a 27.5-percent loss of earning power resulting from the October 31, 2000, accident. Davis appealed, but the review panel of the Workers' Compensation Court affirmed the award entered by the single judge. Davis timely appeals to this court.

## ASSIGNMENTS OF ERROR

Davis assigns that the single judge erred in finding that Davis sustained only a 27.5-percent loss of earning power resulting from the accident and injury of October 31, 2000, and (2) finding that " 'Kuhn's opinion that plaintiff has suffered a loss of earning power of between 25 and 30 percent is not the result of a specific focus or overemphasis placed upon any one job and is a valid analysis containing no speculative criteria.' "

## STANDARD OF REVIEW

 Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Zoucha v. Touch of Class Lounge, ante* p. 89, 690 N.W.2d 610 (2005). A determination as to whether an injured worker has had a loss of earning power is a question of fact to be determined by the Workers' Compensation Court. *Swoboda v. Volkman Plumbing, ante* p. 20, 690 N.W.2d 166 (2004). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Estate of Coe v. Willmes Trucking*, 268 Neb. 880, 689 N.W.2d 318 (2004).

## ANALYSIS

 Before addressing Davis' specific arguments, we review the basic principles underlying our analysis of the issues presented. Davis was awarded permanent partial disability benefits pursuant to Neb. Rev. Stat. § 48-121(2) (Reissue 2004), under which benefits are measured not by loss of bodily function, but by reduction in or loss of earning power or employability. See *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002). Earning power, as used in § 48-121(2), is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted. *Swoboda v. Volkman Plumbing, supra.*

 Thus, the mere fact that after an injury, the employee receives, or is offered, his or her former wages, or a larger sum, does not necessarily preclude recovery of compensation under the workers' compensation statutes. *Schmid v. Nebraska Intergov. Risk Mgt. Assn.*, 239 Neb. 412, 476 N.W.2d 243 (1991). The fact that an employee is still employed and still paid

the same or better does not, of itself, mean he or she has not experienced some loss of earning capacity. *Underwood v. Eilers Machine & Welding*, 6 Neb. App. 631, 575 N.W.2d 878 (1998).

Instead, if an employee, after a work-related injury, receives wages equal to or greater than the wages received before the injury, the wages may be considered in the determination whether an employee has sustained a loss of earning capacity. *Schmid v. Nebraska Intergov. Risk Mgt. Assn., supra; Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990). If, after injury, an employee receives the same or higher wages than before injury, it is indicative, although not conclusive, of the fact that his or her earning power has not been impaired. *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 306 N.W.2d 914 (1981); *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980); *Underwood v. Eilers Machine & Welding, supra.*

With those principles in mind, we turn to the specific arguments made in Davis' appeal. Davis' primary argument is that the single judge's determination was erroneous because it was a function of overemphasis on Davis' employment with Goodyear.

But the single judge, before making a determination of Davis' loss of earning power, set forth a complete and well-reasoned explanation of the legal principles recited above. This single judge explained that while Davis' earning power was to be determined by reference to the general labor market, "it must include the actual job taken and considered as a part of the job mix available in the relevant labor market - the general job market in which the injured worker lives and works." In other words, the single judge clearly applied the correct legal standards to his determination on this issue. Read in this context, the single judge's "independent finding that . . . plaintiff has suffered a 27.5 percent loss of earning power" was the single judge's factual finding of Davis' employability in the general Lincoln, Nebraska, labor market.

Consequently, Davis' argument that the single judge overemphasized Davis' employment with Goodyear is, effectively, an argument that the single judge weighed Kuhn's opinion incorrectly in making a factual finding of Davis' loss of earning power. But our standard of review for factual findings of the Workers' Compensation Court is very deferential. Section 48-185 precludes an appellate court's substitution of its view of the facts for that of

the Workers' Compensation Court if the record contains sufficient evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999). The single judge's factual finding is supported by Kuhn's opinion and the evidence presented at trial regarding Davis' ability to continue working at Goodyear. The single judge's finding is supported by sufficient evidence and is not clearly wrong.

Davis also argues that Kuhn's opinion, itself, placed too much emphasis on Davis' employment with Goodyear. But the law is clear that if, after injury, an employee receives the same or higher wages than before injury, it is indicative, although not conclusive, of the fact that his or her earning power has not been impaired. *Akins v. Happy Hour, Inc., supra*; *Sidel v. Travelers Ins. Co., supra*. Stated more generally, an employee's actual wages, after injury, are pertinent to a determination of the degree to which the employee's earning power has been impaired. While the relevant inquiry includes the employee's ability to obtain employment generally, see *Swoboda v. Volkman Plumbing, ante* p. 20, 690 N.W.2d 166 (2004), in conducting that inquiry, neither the single judge nor the vocational rehabilitation specialist should be expected to disregard the job that the employee actually has.

Davis contends that Kuhn's opinion was speculative and unreliable in that the figures relied upon by the single judge were contingent upon Davis' retaining his job with Goodyear. But, under the circumstances, any opinion regarding Davis' loss of earning power would be contingent upon Davis either retaining or losing his employment with Goodyear. A certain degree of contemplation regarding future events is inherent in any determination of an employee's employability; it is the province of the trier of fact to evaluate the evidence and make a reasonably certain finding of the employee's loss of earning power. Here, the single judge relied upon competent evidence supporting his conclusions that Davis was unlikely to lose his job at Goodyear and that when that job was considered as part of the overall labor market, Davis had suffered a 27.5-percent loss of earning power. See *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002) (affirming loss of earning capacity determination for temporary

partial disability benefits based on rehabilitation specialist's conclusion that employee would keep employment, but be unable to work overtime).

Finally, Davis argues that the "beneficent purposes" of the Nebraska Workers' Compensation Act required the Workers' Compensation Court to award Davis the higher estimation of his loss of earning capacity. Brief for appellant at 22. We have consistently held that the Nebraska Workers' Compensation Act should be broadly construed to accomplish the beneficent purposes of the act. *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001).

But that is a principle of statutory interpretation, requiring us to give statutory language a liberal construction to carry out the spirit of the act. See *id.* This is not a case of statutory interpretation; rather, it is a case of a disputed factual finding. Davis contends that where there is a risk that the Workers' Compensation Court's factual findings may prove incorrect, the beneficent purposes of the act require that risk to be placed on the employer. Davis is effectively arguing that where the evidence could support alternative factual findings, the Workers' Compensation Court should be required to make the finding most favorable to the employee. That is not the law. See *Smith v. Ruan Transport, Inc.*, 190 Neb. 509, 209 N.W.2d 146 (1973).

## CONCLUSION

We find no merit to Davis' assignments of error. The judgment of the Workers' Compensation Court is supported by competent evidence and is affirmed.

AFFIRMED.

HENDRY, C.J., not participating.