Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/25/2020 08:08 AM CDT

Halina Picard, appellee and cross-appellant,
v. P & C Group 1, Inc., doing business as
Camaco, LLC, and Hartford Fire
Insurance Company, appellants
and cross-appellees.

___ N.W.2d ___

Filed July 2, 2020.    No. S-18-207.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

3. **Workers' Compensation: Attorney Fees: Penalties and Forfeitures: Words and Phrases.** Whether a reasonable controversy exists under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016) is a question of fact.

4. **Workers' Compensation: Appeal and Error.** On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. In workers' compensation cases, an appellate court determines questions of law.

5. **Workers' Compensation.** A determination as to whether an injured worker has had a loss of earning power is a question of fact.

6. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

7. **Rules of the Supreme Court: Appeal and Error.** In order to perfect a cross-appeal, an appellee need comply only with the rules of the Nebraska Supreme Court.

8. \_\_\_\_ : \_\_\_\_. A party's failure to file a cross-petition for further review does not preclude the party from cross-appealing because a cross-appeal on further review is properly perfected by complying with court rules.

9. **Workers' Compensation: Attorney Fees: Penalties and Forfeitures: Time.** Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016) authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation.

10. **Workers' Compensation: Attorney Fees: Words and Phrases.** A "reasonable controversy" for the purpose of Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016) exists if (1) there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.

11. **Workers' Compensation.** The issue of apportionment arises when a compensable loss involves successive injuries. When two or more injuries combine, the effect of the injuries together may result in a more severe disability than the injuries' scheduled allowances.

12. **Workers' Compensation: Statutes.** Statutes may permit apportionment (1) between successive employers or insurance carriers, when prior injuries are traceable; (2) between an employer and the employee, when a personal preexisting disability contributes to the resulting disability; and (3) between an employer and a Second Injury Fund, when the preexisting disability is covered by the fund.

13. **Workers' Compensation: Statutes: Liability.** Absent an apportionment statute, the general rule is that an employer takes the employee as the employer finds him or her, and the employer is liable for the entire resulting disability. This is known as the full-responsibility rule.

14. **Workers' Compensation.** Neb. Rev. Stat. § 48-121 (Reissue 2010) provides compensation for three categories of job-related disabilities: subsection (1) sets the amount of compensation for total disability; subsection (2) sets the amount of compensation for partial disability, except in cases covered by subsection (3); and subsection (3) sets out "schedule" injuries to specified parts of the body with compensation established therefor.

15. \_\_\_\_. Pursuant to Neb. Rev. Stat. § 48-121(2) (Reissue 2010), permanent partial disability benefits are measured not by loss of bodily function, but by reduction in or loss of earning power or employability.

16. **Workers' Compensation: Words and Phrases.** Earning power, as used in Neb. Rev. Stat. § 48-121(2) (Reissue 2010), is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted.

17. **Workers' Compensation: Appeal and Error.** With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination.

18. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Petition for further review from the Court of Appeals, Riedmann, Bishop, and Welch, Judges, on appeal thereto from the Workers' Compensation Court, Julie A. Martin, Judge. Judgment of Court of Appeals affirmed in part, and in part reversed and remanded with directions.

Jessica R. Voelker, of Law Office of Steven G. Piland, and Jarrod D. Reece and Bryan S. Hatch, of Likes Meyerson Hatch, L.L.C., for appellants.

Lee S. Loudon and Joseph A. Huckleberry, of Law Office of Lee S. Loudon, P.C., L.L.O., for appellee.

Todd D. Bennett, of Rehm, Bennett & Moore, for amicus curiae Nebraska Association of Trial Attorneys.

Dallas D. Jones, David A. Dudley, Jennifer S. Caswell, Thomas B. Shires, and Jenna M. Christensen, of Baylor Evnen, L.L.P., for amicus curiae Nebraskans for Workers' Compensation Equity and Fairness et al.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

This case involves two workers' compensation awards based on successive whole body injuries. P & C Group 1, Inc., doing business as Camaco, LLC, and Hartford Fire Insurance Company, P & C Group 1's insurer (collectively P & C), petitioned this court for further review of the Nebraska Court of Appeals' affirmance of the Nebraska Workers' Compensation Court's awards for injuries suffered by Halina Picard in two separate accidents. We granted further review in order to determine whether Nebraska law permits the apportionment of workers' compensation awards outside of Neb. Rev. Stat. § 48-128 (Reissue 2010). On further review, we affirm in part, and in part reverse and remand with directions.

## BACKGROUND

Picard has been employed by P & C Group 1 as a production worker since 1989. In April 2012, Dr. Jeffrey Tiedeman diagnosed Picard with bilateral carpal tunnel syndrome after Picard was injured at work. Dr. Tiedeman performed bilateral carpal tunnel release surgery on Picard's wrists. After concluding Picard had reached maximum medical improvement with a 10-percent permanent partial impairment of each hand, Dr. Tiedeman released Picard back to work with a permanent restriction of lifting no more than 5 pounds. Dr. Tiedeman also suggested Picard should only occasionally do work above shoulder level. P & C paid temporary total disability benefits, permanent partial disability benefits, and Picard's medical expenses for the 2012 accident.

In 2015, Picard was working in a different position at P & C Group 1 that accommodated her restrictions. While bending over to pick up production parts, Picard experienced severe back pain and was later diagnosed by Dr. Geoffrey McCullen to have a herniated disk. Dr. McCullen performed a discectomy operation on Picard's spine and eventually determined that Picard could return to her position at P & C Group 1 with

the following permanent restrictions: no bending to the floor; only occasional bending, squatting, or twisting; and no lifting greater than 10 pounds. In doing so, Dr. McCullen articulated: "The restrictions above are for the spine," not the hands. Dr. McCullen concluded that Picard had suffered a 13-percent impairment of the whole body.

After the 2015 surgery, Picard returned to work at P & C Group 1 in the same position she held prior to her back injury, and she was able to perform her assigned job without additional accommodations. At the time of trial, Picard remained employed by P & C Group 1 in the same position, and her hourly rate of pay was greater than it had been prior to the 2015 injury.

In January 2016, Picard filed claims against P & C relating to her 2012 and 2015 injuries. The cases were consolidated by the Nebraska Workers' Compensation Court. A stipulated trial was held to determine whether (1) Picard suffered any loss of earning power as a result of the 2015 injury; (2) P & C was entitled to apportion any loss of earning power benefits attributable to Picard's 2012 injury toward any benefits that may be due and owing for loss of earning power for the 2015 injury; and (3) Picard was entitled to penalties, attorney fees, and interest for P & C's failure to pay any permanent disability benefits.

Based on Picard's permanent restrictions given by Dr. Tiedeman, court-appointed vocational counselor Kim Rhen opined that Picard had sustained a 60-percent loss of earning capacity as a result of the 2012 injury. Rhen determined that the 2012 restrictions would have resulted in a 100-percent loss of access to available jobs for Picard. However, recognizing the fact that Picard remains competitively employed by P & C in a full-time position that accommodates her disability and the fact that P & C would likely continue to employ her, Rhen estimated the loss of earning capacity from the injury to Picard's hands to be 60 percent. As to the 2015 injury, Rhen determined that Picard was employable after the

low-back injury, but opined that Picard had sustained a 50- to 55-percent loss of earnings as a result.

Following trial, the compensation court determined Picard had not been adequately compensated for the 2012 injury under Neb. Rev. Stat. § 48-121(3) (Reissue 2010), which provides, in relevant part:

> If, in the compensation court's discretion, compensation benefits payable for a loss or loss of use of more than one member or parts of more than one member set forth in this subdivision, resulting from the same accident or illness, do not adequately compensate the employee for such loss or loss of use and such loss or loss of use results in at least a thirty percent loss of earning capacity, the compensation court shall, upon request of the employee, determine the employee's loss of earning capacity consistent with the process for such determination under subdivision (1) or (2) of this section, and in such a case the employee shall not be entitled to compensation under this subdivision.

Contrary to the opinion offered by Rhen, the court made its own factual finding that Picard suffered a 75-percent loss of earning power as a result of the 2012 injury to her hands. The compensation court further found that (1) Picard was entitled to an award for a whole body injury based on the 2012 carpal tunnel syndrome, (2) Picard was entitled to a separate whole body injury award for a 55-percent loss of earning capacity based on the 2015 back injury, (3) apportionment was not appropriate because Picard's injuries were to different parts of her body and she still would have sustained loss of earnings for the 2015 back injury even if she had not sustained the 2012 carpal tunnel injuries, and (4) Picard was entitled to attorney fees and penalties under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016).

P & C appealed and assigned as error that the compensation court erred in (1) finding that apportionment did not apply, (2) assessing loss of earning power to the 2015 injury,

and (3) awarding attorney fees and penalties. P & C argued that apportionment should have been applied because Picard continued to suffer the effects of her 2012 injuries at the time she suffered her 2015 back injury. P & C further asserted that Picard's subsequent back injury should not have been assessed for a loss of earning power because there was no additional loss in Picard's ability to earn wages. Finally, P & C argued that penalties and attorney fees should not have been awarded because there was a sufficient basis in law and fact for P & C to dispute payment of benefits to Picard.

Noting that a lack of clarity existed in the Court of Appeals' prior decisions regarding apportionment and/or successive whole body injury awards, the court reversed and vacated the compensation court's award of attorney fees, penalties, and interest provisions. Affirming the awards for Picard's 2012 and 2015 injuries, the Court of Appeals held that Picard's award for the second injury should not have been apportioned with the award for her earlier injury and that the limitations from the 2012 injury should not be considered when assessing the impact of the 2015 injury.

In regard to P & C's argument that the doctrine of apportionment should apply, the Court of Appeals held that because Nebraska does not have an apportionment statute, apportionment was not applicable. In doing so, the Court of Appeals noted that because Picard's injuries were to different parts of her body, the second injury and resulting disability would have existed regardless of whether the prior injury had occurred.

Addressing P & C's second assignment of error, the Court of Appeals rejected the argument that Picard suffered no additional lost earning power from the second injury because Picard's lifting restriction from the 2012 injuries to her wrists was greater than the lifting restrictions from the 2015 injury to her back. The Court of Appeals interpreted § 48-121(2) as requiring the compensation court to review a claimant's lost earning power from a current injury independent of any limitations from a prior dissimilar compensable injury. It held that

Picard was entitled to compensation for lost earning power resulting from each of the two successive injuries. The court reasoned that a contrary holding would deny Picard compensation for her current injury and, therefore, offend "'[t]he principal purpose of the [Nebraska Workers' Compensation] Act [which] is to provide an injured worker with prompt relief from the adverse economic effects caused by a work-related injury or occupational disease.'"[1]

Both Picard and P & C filed petitions for further review with this court. P & C sought further review of the Court of Appeals' affirmance of the two compensation awards. Picard sought further review of the Court of Appeals' holding that reversed and vacated the compensation court's finding that Picard was entitled to penalties, attorney fees, and interest. We granted P & C's petition and denied Picard's.

Picard subsequently filed a cross-appeal, in which her sole assignment of error is that the Court of Appeals erred in reversing the compensation court's finding that Picard was entitled to penalties, attorney fees, and interest under § 48-125.

The Nebraska Association of Trial Attorneys and Nebraskans for Workers' Compensation Equity and Fairness, along with Crete Carrier Corporation; the Nebraska Intergovernmental Risk Management Association II; SFM Companies; Lockton Companies, LLC; Dakota Truck Underwriters; and Risk Administration Services, Inc. (collectively NWCEF), have filed briefs as amici curiae.

ASSIGNMENTS OF ERROR

In its petition for further review, P & C's assignments of error, restated, are that the Court of Appeals erred (1) in holding that the disability benefits awarded for Picard's 2015 accident should not be apportioned with the benefits awarded for the 2012 accident; (2) by failing to analyze

---

[1] *Picard v. P & C Group 1*, 27 Neb. App. 646, 668, 934 N.W.2d 394, 409 (2019) (quoting *Risor v. Nebraska Boiler*, 274 Neb. 906, 744 N.W.2d 693 (2008)).

Picard's loss of earning power under the whole body injury framework as required by § 48-121(2); and (3) by reasoning that "'Picard would be denied compensation for her current injury'" if apportionment applied and, thus, permitting double recovery.

On cross-appeal, Picard's sole assignment of error is that the Court of Appeals erred in reversing the compensation court's finding that Picard was entitled to penalties, attorney fees, and interest under § 48-125.

## STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[2]

[2] A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[3]

[3] Whether a reasonable controversy exists under § 48-125 is a question of fact.[4]

[4] On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[5] In workers' compensation cases, an appellate court determines questions of law.[6]

---

[2] *Cox Nebraska Telecom v. Qwest Corp.*, 268 Neb. 676, 687 N.W.2d 188 (2004).

[3] Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018).

[4] *Armstrong v. State*, 290 Neb. 205, 859 N.W.2d 541 (2015).

[5] *Id.*

[6] *Id.*

[5] A determination as to whether an injured worker has had a loss of earning power is a question of fact.[7]

## ANALYSIS

*Picard's Cross-Appeal.*

[6] As an initial matter, we must first address whether we have jurisdiction over the cross-appeal filed by Picard in this case. Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[8]

Picard's sole assignment of error on cross-appeal is that the Court of Appeals erred in reversing the compensation court's finding that Picard was entitled to penalties, attorney fees, and interest under § 48-125. This assignment of error was set forth in Picard's petition for further review, which this court denied. While Picard's petition for further review is not properly before this court, our case law indicates that her cross-appeal is.

Neb. Ct. R. App. P. § 2-102(G) (rev. 2015) provides in relevant part:

> If the Supreme Court grants review of a Court of Appeals decision, the Supreme Court will review only the errors assigned in the petition for further review and discussed in the supporting memorandum brief. The Supreme Court may limit the issues to one or more of those raised by the parties and may notice plain error at its discretion.

[7] In *Williams v. Gering Pub. Schools*,[9] we explained:

> A cross-appeal, as distinguished from the perfection of a direct appeal, exists in this state only by virtue of the rules of this court. There is no statutory authorization for

---

[7] See *Swoboda v. Volkman Plumbing*, 269 Neb. 20, 690 N.W.2d 166 (2004).

[8] *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017).

[9] *Williams v. Gering Pub. Schools*, 236 Neb. 722, 726, 463 N.W.2d 799, 803 (1990) (citing *Edquist v. Commercial Sav. & Loan Assn.*, 191 Neb. 618, 217 N.W.2d 82 (1974)).

the procedure. . . . Therefore, in order to perfect a cross-appeal, an appellee need comply only with the rules of the Nebraska Supreme Court.

[8] In *Kline v. Farmers Ins. Exch.*,[10] we addressed a cross-appeal on further review. In that case, we held that a party's failure to file a cross-petition for further review does not preclude the party from cross-appealing because a cross-appeal on further review is properly perfected by complying with our court rules.[11] In doing so, we stated: "Neb. Ct. R. App. P. § 2-102(H) provides that each party may file additional briefs in compliance with Neb. Ct. R. App. P. § 2-109 when further review is granted. Section 2-109 allows appellees to file a cross-appeal by noting on the cover of their brief 'Brief on Cross-Appeal.'"[12]

This court declined to exercise jurisdiction over Picard's petition for further review; however, her cross-appeal was filed after further review was granted, and it complies with Neb. Ct. R. App. P. § 2-109 (rev. 2014). Therefore, we have jurisdiction over the cross-appeal.

After concluding that we have jurisdiction, we now turn to the merits of Picard's cross-appeal. Picard assigns that the Court of Appeals erred in failing to affirm the Workers' Compensation Court's factual finding that she was entitled to penalties, attorney fees, and interest.

[9,10] Section 48-125 authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation.[13] This court has held that a "reasonable controversy" for the purpose of § 48-125 exists if (1) there is a question

---

[10] *Kline v. Farmers Ins. Exch.*, 277 Neb. 874, 766 N.W.2d 118 (2009).

[11] *Id.*

[12] *Id*. at 879-80, 766 N.W.2d at 123.

[13] *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999).

of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.[14] Whether a reasonable controversy exists under § 48-125 is a question of fact.[15]

The compensation court found that there was no reasonable controversy governing the substance of Picard's 2015 award and that therefore, she was entitled to attorney fees, penalties, and interest under § 48-125. Recognizing a lack of clarity in its prior authority governing the applicability of apportionment and/or considerations in determining an award for successive compensable injuries to the body as a whole, the Court of Appeals reversed and vacated that portion of Picard's award.

We granted P & C's petition for further review in this case in order to determine whether Nebraska law permits the apportionment of workers' compensation awards outside of § 48-128. We agree with the Court of Appeals in that a reasonable controversy did exist regarding the compensability of Picard's 2015 injury. Thus, the Court of Appeals did not err in reversing and vacating Picard's award under § 48-125.

*Apportionment.*

P & C and amici curiae NWCEF argue that the Court of Appeals erred in holding that the disability benefits awarded for Picard's 2015 accident should not be apportioned with the benefits awarded for the 2012 accident. Before addressing this argument, we first survey the basic principles regarding apportionment and its history in Nebraska.

---

[14] *Id*. (citing *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987)).

[15] *McBee v. Goodyear Tire & Rubber Co., supra* note 13.

*Principles of Apportionment.*

[11] The issue of apportionment arises when a compensable loss involves successive injuries.[16] When two or more injuries combine, the effect of the injuries together may result in a more severe disability than the injuries' scheduled allowances.[17] For example, if an employee is deaf in one ear and, as a result of a workplace accident, loses his hearing in the other ear, the loss of hearing in the second ear may result in total disability rather than partial disability. Some states have statutes which permit the employer to apportion, or assign, the loss attributable to an employee's preexisting disability and pay for only the subsequent injury that occurred during employment.[18]

[12,13] Statutes may permit apportionment (1) between successive employers or insurance carriers, when prior injuries are traceable; (2) between an employer and the employee, when a personal preexisting disability contributes to the resulting disability; and (3) between an employer and a Second Injury Fund, when the preexisting disability is covered by the fund.[19] However, absent an apportionment statute, the general rule is that an employer takes the employee as the employer finds him or her, and the employer is liable for the entire resulting disability.[20] This is known as the full-responsibility rule.[21]

*History of Apportionment in Nebraska.*

Prior to 1947, Nebraska had a statute permitting apportionment between an employer and a claimant: "If an employee receives an injury, which, of itself, would only cause partial

---

[16] See 8 Arthur Larson et al., Larson's Workers' Compensation Law § 90 (2019).

[17] See *id.* at § 90.01.

[18] See *id.*

[19] See *id.* at § 90.02.

[20] See *id.* at § 90.01.

[21] See *id.*

disability, but which, combined with a previous disability, does in fact cause total disability, the employer shall only be liable as for the partial disability, so far as the subsequent injury is concerned."[22]

In 1947, § 48-128 was amended to create Nebraska's Second Injury Fund.[23] After World War II, the majority of states enacted Second Injury Fund statutes to protect workers with preexisting disabilities from employer discrimination through apportionment.[24] Under these statutes, employers were not liable for an employee's preexisting injury that later combined with a workplace injury to create a greater overall disability.[25] The employer's liability was limited to injuries that occurred during employment because Second Injury Funds paid the portion of disability benefits attributable to the preexisting injury.[26]

Nebraska's Second Injury Fund permitted the apportionment of compensation benefits attributable to a preexisting disability and provided, in relevant part:

> If an employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, which is or is likely to be a hindrance or obstacle to his or her obtaining employment or obtaining reemployment if the employee should become unemployed and which was known to the employer prior to the occurrence of a subsequent compensable injury, receives a subsequent compensable injury resulting in additional permanent partial or in permanent total disability so that the degree

---

[22] Comp. Stat. § 48-128 (1929). Accord *Gilkeson v. Northern Gas Engineering Co.*, 127 Neb. 124, 254 N.W. 414 (1934).

[23] See 1947 Neb. Laws, ch. 174, § 1, p. 559.

[24] Rhett Buchmiller, Note, *Second Injury Funds Nationally and in Missouri — Liability, Functionality, and Viability in Modern Times*, 84 Mo. L. Rev. 851 (2019).

[25] See *id.*

[26] See *id.*

or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability.[27]

In 1990, the Americans with Disabilities Act, which prohibited employers from discriminating against a qualified employee based on his or her disability, was enacted, and Second Injury Funds became obsolete.[28] As a result, Nebraska closed its Second Injury Fund in 1993 to all claims for injuries occurring after December 1, 1997.[29]

Nebraska does not presently have an apportionment statute for claims occurring after December 1, 1997, and this court has not yet decided whether Nebraska law permits apportionment of damages for successive work-related injuries outside of § 48-128. In *Heiliger v. Walters & Heiliger Electric, Inc.*,[30] we addressed whether a claimant's preexisting back injury should reduce a disability award when the back injury is later aggravated by a work-related accident resulting in further disability. We held that the presence of a prior injury should not reduce the employee's recovery unless there is a claim against the Second Injury Fund.[31] Although *Heiliger* was decided prior to the Second Injury Fund's abolishment, *Heiliger*

---

[27] § 48-128 (Reissue 1993).

[28] See, generally, Catherine M. Doud, *Oklahoma's Special Indemnity Fund: A Fund Without a Function?*, 30 Tulsa L.J. 745 (1995); 8 Larson et al., *supra* note 16, § 91.03[8].

[29] See § 48-128 (Reissue 2010).

[30] *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990).

[31] *Id.*

suggests that outside of § 48-128, apportionment did not exist in Nebraska even prior to the statutory abolition of the Second Injury Fund.

*Apportionment in Court of Appeals.*

In the present case, the Court of Appeals concluded that because Nebraska does not have an apportionment statute, apportionment is not appropriate. In doing so, the Court of Appeals described several of its earlier cases regarding apportionment as having a lack of clarity. We interpret that to mean that the Court of Appeals' holding in this case is inconsistent with its prior jurisprudence governing the applicability of apportionment.

In *Jacob v. Columbia Ins. Group*,[32] the Court of Appeals held that apportionment did not apply based on the facts presented, but the court established a test for determining under what circumstances apportionment should apply. The court stated that "'[t]o be apportionable, then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident.'"[33] The court also noted that the problem of apportionment may be encountered when an employee's disability from a prior injury contributes to a claimant's total disability after a successive injury.[34]

In *Cummings v. Omaha Public Schools*,[35] the Court of Appeals concluded apportionment was appropriate in a case involving an employee's previously compensated disability for a back injury and a series of work-related accidents that exacerbated the back injury. In that case, the Court of Appeals held that *Heiliger* did not prohibit apportioning a claimant's

---

[32] *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994).

[33] *Id.* at 491, 511 N.W.2d at 221.

[34] *Jacob v. Columbia Ins. Group, supra* note 32.

[35] *Cummings v. Omaha Public Schools*, 6 Neb. App. 478, 574 N.W.2d 533 (1998).

recovery for disability between a prior, compensated injury to the body as a whole and a subsequent compensable injury to the body as a whole.

In *Cummings*, the Court of Appeals applied the test established in *Jacob* when holding that the employee was "not entitled to be compensated again" for the original disability because the claimant's "prior disability [had continued] to act as a source of lost earning capacity even after the subsequent series of accidents."[36] Distinguishing *Jacob*, the Court of Appeals stated:

> Because both injuries [in *Jacob*] were injuries to members, rather than injuries to the body as a whole, the claimant [in *Jacob*] did not suffer any disability in terms of loss of earning capacity, as distinguished from functional disability, from the prior injury, and the award which he received for the prior injury did not need to be deducted from the disability benefits [to] which he was entitled as a result of the subsequent injury.[37]

Picard and amicus curiae Nebraska Association of Trial Attorneys contend that apportionment is not appropriate in this case because it involves two separate disabilities—the 2012 accident resulted in bilateral injuries to Picard's hands and the 2015 injury resulted in injuries to Picard's back. However, the fact that Picard's injuries involve separate body parts is not dispositive. A compensable aggravated disability may be caused by the combination of two or more injuries even when those injuries do not act directly upon each other.[38]

Nevertheless, Nebraska does not have an apportionment statute applicable to the facts presented here. The Legislature's 1947 and 1993 amendments to § 48-128 effectively abrogated apportionment for all claims for injuries occurring after December 1, 1997. And in the absence of such a statute, the

---

[36] *Id.* at 486, 574 N.W.2d at 540.

[37] *Id.*

[38] See, 8 Larson et al., *supra* note 16, § 90.04[3].

full-responsibility rule applies, under which the employer is generally held liable for the entire disability.[39]

Our decision in *Heiliger* suggests that outside of § 48-128, Nebraska applies the full-responsibility rule. We explained:

> [A] claimant is entitled to an award under the [Nebraska] Workers' Compensation Act for a work-related injury disability if the claimant shows, by a preponderance of evidence, that the claimant sustained the injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment, even though a preexisting disability or condition had combined with the present work-related injury to produce the disability for which the claimant seeks an award. . . . Thus, allocation of disability attributable to a work-related injury and disability attributable to an antecedent or preexisting disability or condition which may or may not be work-related is irrelevant in this case inasmuch as there is no claim against the Second Injury Fund.[40]

Therefore, we clarify that unless otherwise provided by statute, Nebraska applies the full-responsibility rule and generally does not apportion the recovery for two or more successive work-related injuries. We further conclude that because Picard's injuries occurred after December 1, 1997, apportionment was inapplicable here. Finally, we find that the Court of Appeals did not err in its determination that Picard's second injury award should not be apportioned with the first.

---

[39] See *id.* at § 90.01. See, also, *JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887 (Iowa 2016) (articulating that absent statute permitting apportionment, full-responsibility rule generally applies). Accord, *Mergentime Perini v. Dept. of Emp. Serv.*, 810 A.2d 901 (D.C. 2002); *Liberty Mut. Ins. Co. v. Peoples*, 595 S.W.2d 135 (Tex. Civ. App. 1979); *Colorado Fuel & Iron Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1962); *Tomes v. Gray & Dudley Company*, 201 Tenn. 697, 301 S.W.2d 389 (1957).

[40] *Heiliger v. Walters & Heiliger Electric, Inc., supra* note 30, 236 Neb. at 473, 461 N.W.2d at 575.

*Picard's Earning Power.*

P & C argues that the Court of Appeals erred in its analysis of Picard's loss in earning capacity caused by the second injury. P & C and amici curiae NWCEF assert that by focusing on the part of the body involved, the Court of Appeals failed to analyze Picard's injuries as injuries to the body as a whole, as required by § 48-121(2). Picard, on the other hand, maintains that she is entitled to separate awards because the successive accidents each independently reduced her earning power.

[14] Section 48-121 provides compensation for three categories of job-related disabilities: subsection (1) sets the amount of compensation for total disability; subsection (2) sets the amount of compensation for partial disability, except in cases covered by subsection (3); and subsection (3) sets out "schedule" injuries to specified parts of the body with compensation established therefor.[41]

[15,16] The compensation court issued two awards in favor of Picard for permanent partial disability benefits pursuant to § 48-121(2), under which benefits are measured not by loss of bodily function, but by reduction in or loss of earning power or employability.[42] Section 48-121(2) provides, in relevant part:

> For disability partial in character, except the particular cases mentioned in subdivision (3) of this section, the compensation shall be sixty-six and two-thirds percent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter, but such compensation shall not be more than the maximum weekly income benefit specified in section 48-121.01.

Since 1939, this court has consistently held that earning power, as used in § 48-121, is not synonymous with wages, but includes eligibility to procure employment generally, ability to

---

[41] See *Rodgers v. Nebraska State Fair*, 288 Neb. 92, 846 N.W.2d 195 (2014).

[42] See *Davis v. Goodyear Tire & Rubber Co.*, 269 Neb. 683, 696 N.W.2d 142 (2005).

hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted.[43]

After finding Picard had suffered a 75-percent loss of earning power as a result of the 2012 accident and injury to her hands, the compensation court determined Picard was entitled to the sum of $347.06 per week for 292³⁄₇ weeks. The compensation court further concluded that Picard was entitled to the additional sum of $229.01 per week for 288 weeks after finding Picard had also suffered a 55-percent loss of earning capacity as a result of the 2015 accident and injury to her back.

Affirming the awards, the Court of Appeals determined that Picard was entitled to independent awards for both the 2012 injury to her wrists and the 2015 injury to her back because the successive injuries involved different parts of her body. In doing so, the Court of Appeals recognized that the compensation court had "assess[ed] Picard's lost earning power from the 2015 back injury as if the 2012 injury did not exist."[44] It further stated: "In short, it appears that because the court correctly concluded that apportionment was not applicable, it disregarded any disability from the first accident in assessing lost earnings from the second, resulting in the court's ordering an additional award for a 55-percent loss of earning capacity."[45]

[17] A determination as to whether an injured worker has had a loss of earning power is a question of fact.[46] In this case,

---

[43] Id.; Sidel v. Travelers Ins. Co., 205 Neb. 541, 288 N.W.2d 482 (1980); Anderson v. Cowger, 158 Neb. 772, 65 N.W.2d 51 (1954); Micek v. Omaha Steel Works, 136 Neb. 843, 287 N.W. 645 (1939).

[44] Picard v. P & C Group 1, supra note 1, 27 Neb. App. at 667, 934 N.W.2d at 408.

[45] Id. at 667-68, 934 N.W.2d at 408.

[46] Swoboda v. Volkman Plumbing, supra note 7.

the Court of Appeals recognized that Picard's earning power was not further reduced after her 2015 back injury, but went on to find that Picard was entitled to independent awards because the injuries were to separate body parts. The issue of whether a worker may recover independent awards for successive whole body injuries when the subsequent injury is to a separate body part, but does not result in a further loss of earning power, presents a question of law rather than fact. With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination.[47]

Pursuant to § 48-121(2), permanent partial disability benefits are measured not by loss of bodily function, but by reduction in or loss of earning power or employability.[48] The compensation is "the difference between the wages received *at the time of the injury and the earning power of the employee thereafter*."[49]

Picard's loss of earning power after the subsequent injury cannot be accurately assessed without considering her disability from the first injury. At the time of the 2015 injury, Picard was working in a position that accommodated the limitations and restrictions from her 2012 injury. At the time of trial, Picard remained competitively employed at P & C in the same position she held prior to the 2015 injury; she was capable of performing her assigned job without any additional accommodations, limitations, or restrictions; and her hourly rate was greater than her hourly rate at the time of the 2015 accident. This demonstrates that Picard suffered no loss of earning capacity, and the Court of Appeals agreed.

But the Court of Appeals then held that the 2015 injury and impact on Picard's lost earning power should be assessed independently of any limitations from Picard's 2012 injury. Although the 2015 injury involved a different body part,

---

[47] *Madlock v. Square D. Co*., 269 Neb. 675, 695 N.W.2d 412 (2005).

[48] See *Davis v. Goodyear Tire & Rubber Co., supra* note 42.

[49] § 48-121(2) (emphasis supplied).

Picard did not suffer a loss of earning power or employability as a result. Because Picard's earning power was not impaired by the 2015 accident, the injury was not compensable under § 48-121(2). We conclude that both the compensation court and the Court of Appeals erred in disregarding Picard's disability from the 2012 accident when assessing her lost earnings from the 2015 injury. Accordingly, we reverse the Court of Appeals' affirmance of the compensation court's award of benefits for Picard's 2015 accident and injury.

*Double Recovery.*

[18] P & C and amici curiae NWCEF argue that the Court of Appeals erred in holding that apportionment was inapplicable because the award for Picard's 2015 injury resulted in an impermissible double recovery. Picard contends that P & C's claim regarding double recovery is an equitable claim and that the compensation court lacks equitable jurisdiction. Having determined that Picard's award for the 2015 injury should be reversed, we need not address this argument. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[50]

## CONCLUSION

We conclude that the Court of Appeals was correct in its conclusion that apportionment was inapplicable here. However, the Court of Appeals erred in affirming the compensation court's award of benefits for Picard's 2015 accident and injury. We therefore reverse this portion of the Court of Appeals' decision and remand the cause with directions to enter an order affirming the compensation court's award of benefits for the 2012 injury and reversing the award of benefits for the 2015 injury.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

---

[50] *Whitesides v. Whitesides*, 290 Neb. 116, 858 N.W.2d 858 (2015).